## Case No. 9,857.

MORSE et al. v. MASSACHUSETTS NAT. BANK.

FISKE v. SAME.

[1 Holmes, 209.] [1]

Circuit Court, D. Massachusetts.    March, 1873.

STATUTE OF FRAUDS—DEBT OF ANOTHER—PROMISE OF BANK TO PAY CHECK.

A verbal agreement by a bank, made with the payee, on presentment of a check on the bank, the bank then having no funds of the drawer on deposit, to pay the check if the payee will deposit it in another bank, so that it shall be presented for payment through the clearing-house, is within the statute of frauds.

Actions at law by [Stephen Morse, Jr., and others, and Frank S. Fiske] the payees of certain checks drawn by one Beal on the defendant bank. The defendant demurred to the declarations, and the cases were heard on the demurrers.

George S. Hale and George S. Hillard, for plaintiffs.

Preston & Kimball and Converse & Kelley, for defendant.

SHEPLEY, Circuit Judge. The declaration in each of these cases alleges that the plaintiff, on the twenty-ninth day of August, 1866, was the owner and possessor of a check drawn and signed by one B. Franklin Beal, whereby Beal directed the Massachusetts National Bank to pay to the order of the plaintiff the sum of ten thousand two hundred and ninety dollars; that the plaintiff on the same day presented the check for payment; and the defendants, in consideration that the plaintiff would deposit said check for collection in some other bank in the city of Boston, so that the same should be presented for payment through an association called and known as the Clearing-House Association, promised and agreed with the plaintiff, that, upon such presentation, they, the said defendants, would pay the same; and the plaintiff alleges that, in consideration thereof and in pursuance of the said request, he did agree to deposit said check in some other bank in Boston, that the same should be transmitted from said bank through the clearing-house for payment; and accordingly did deposit it in the First National Bank; and the check was, by the First National Bank, through the Clearing-House Association, duly presented to defendants for payment, and defendants refused to pay the same. Defendants demur to the declaration, and plaintiffs join in the demurrer.

There is no averment that, at the time of presentation of the check, the drawer had any funds on deposit in the defendant bank, or that defendant at that time was under any obligation to honor his checks.

---

[1] [Reported by Jabez S. Holmes, Esq., and here reprinted by permission.]

The suit is brought by the original payee of the check, and not by an indorsee or subsequent assignee or bona fide holder for value. The question presented is, whether, when a check is drawn upon a bank by a drawer who has no funds on deposit to pay the check, the bank is liable upon its verbal promise to pay, if the holder would deposit the check in another bank and have it presented through the Clearing-House Association; in case the holder agrees to deposit, and does so deposit, the check in another bank, and have it presented.

The contract of a bank with a depositor is to pay his checks when presented for payment, if, at the time of presentment of the check, he has funds on deposit sufficient to pay the check. Cashiers of banks are held out to the public as having authority to act according to the general usage, practice, and course of business conducted by the bank; and their acts, within the scope of such usage, practice, and course of business, will in general bind the bank in favor of third persons possessing no other knowledge. Minor v. Mechanics' Bank, 1 Pet. [26 U. S.] 70; Merchants' Bank v. State Bank, 10 Wall. [77 U. S.] 604. To this extent the liability of the bank for the acts of its officers is recognized in the opinions of the dissenting justices, as well as in the opinion of the court in the case last cited. And in that case, where a cashier had certified as "good," checks of a drawer having no funds on deposit to pay the checks, it was held that it should have been left to the jury to determine whether from the evidence as to the powers exercised by the cashier, with the knowledge and acquiescence of the directors, and the usage of other banks in the same city, it might not be fairly inferred that the cashier had authority to bind the bank by such certificate. The certificate of the cashier of a bank that a check is "good," is a representation of a present existing fact, within his knowledge as cashier; and if that certificate be made by him in the course of his ordinary business as cashier, it will bind the bank in favor of innocent third persons, upon the principle of estoppel in pais, even if the certificate be not true and the drawer of the check has no funds on deposit in the bank. The ordinary duties of a cashier are well known. They are to keep the funds, notes, bills, and other choses in action, of the bank, to be used from time to time for the exigencies of the bank; to receive directly, and through subordinate officers, all moneys and notes of the bank; to surrender notes and securities upon payment; to draw checks; to withdraw funds of the bank on deposit; and, generally, to transact, as the executive officer of the bank the ordinary routine of business. But the ordinary duties of a cashier do not comprehend the making of a contract which involves the payment of money without an express authority from the directors, unless

it be such as relates to the usual and customary transactions of the bank. Bank of U. S. v. Dunn, 6 Pet. [31 U. S.] 59; U. S. v. Bank of Columbus, 21 How. [62 U. S.] 364.

Defendant contends that it was not in the power of any cashier or other officer of a national bank to make a valid promise to pay a check not drawn against funds deposited in the bank, simply in consideration that the holder of the check will present it through some other bank, and have it pass through the clearing-house. If this point in relation to the authority of the cashier or teller, or other officer of the bank as such cashier, teller, or other officer merely, were open on the state of pleadings in this case, I should not find much difficulty in deciding that such a promise was wholly outside of the ordinary duties of a cashier or other officer of the bank, and would not bind the bank in the absence of proof of express delegation from the board of directors of power to make the contract. But the declaration in this case avers that the promise was made by the bank, not by the cashier or any other officer, and the demurrer admits the averment. Willets v. Phenix Bank, 2 Duer, 120. The case must, therefore, on the pleadings, be considered as presenting the question of the liability of the bank upon the promise declared upon as the promise of the bank.

There was no representation made in this case by any officer of the bank that the drawer had any funds in the bank when the check was presented. If such was the case, the bank was bound to pay the check on presentation. The refusal of the bank to do so, although accompanied with a promise to pay it at a future time, was in fact information to the holder of the check that the bank had no funds of the drawer on deposit at that time wherewith to pay the check. The case does not, therefore, fall within that class of cases like Pope v. Bank of Albion, 59 Barb. 226, in which it has been held that any language, whether verbal or written, employed by an officer of a banking institution whose duty it is to know the financial standing and credit of its customers, representing that a check drawn upon it is good, and will be paid, estops the bank from thereafter denying, as against a bona fide holder of the check, the want of funds to pay the same. Nor do the plaintiffs in these cases represent bona fide holders of the checks, who have purchased the same upon the strength of such representations. There does not appear to be any thing in this case to take the promise declared on out of the operation of the statute of frauds.

A check is merely evidence of a debt due from the drawer. Whether it shall operate as payment or not, depends on two facts: first, that the drawer has funds to his credit in the bank upon which it is drawn; and, second, that the bank is solvent, or in other words, pays its bills and the checks duly drawn upon it, on demand. Taylor v. Wilson, 11 Metc. [Mass.] 51.

There being no funds of the drawers of these checks in the bank, the bank received no benefit or advantage from the promise of the holder to deposit the checks in the other bank, and that the same should be presented through the clearing-house. The promisors lost nothing by such promise. They had seasonably presented the checks; were guilty of no laches; were not even obliged to notify the drawers of the non-payment, the drawee having no funds. They did not disable themselves from enforcing their debt against Beal, or promise to delay enforcing or collecting it. They were as much at liberty to collect their debts of Beal, while the unpaid checks were in the banks, or clearing-house, for collection, as if they were in fact, as they were in law, in their own possession.

The debt remained the debt of Beal. The promise of the bank to pay it was a promise to pay the debt of another, and void under the statute of frauds. This is not a case where the guaranty or promise which is collateral to the principal contract is made at the same time and becomes an essential ground of the credit given to the principal or direct debtor. In this case, the collateral undertaking of the bank was subsequent to the creation of the debt, and was not the inducement to it, though the subsisting liability was the ground of the promise. There must, to sustain the promise and take it out of the operation of the statute, be some other and further consideration shown; for the consideration for the original debt will not attach to this subsequent promise. Wain v. Warlters, 5 East, 20; Leonard v. Vredenburg. 8 Johns. 31. The promise of the payees of these checks, as set out in the declaration, does not amount to such further and new consideration as to take the case out of the operation of the statute. It is contended that it amounts to a parol acceptance of the checks, and that a parol acceptance of a check is good. Authority may be found in many text-books of writers of high authority upon commercial law, for the proposition stated, without qualification or exception, that a parol acceptance of a bill is good. Vide 1 Pars. Notes & B. 285. But it is believed that an examination of the cases cited in support of this proposition will not sustain its application to the case of a parol accommodation acceptance of a bank check. A verbal acceptance of, or a verbal promise to accept, a check when the acceptor has funds of the drawer in his hands, is entirely without the operation of the statute, from the consideration that the drawee's engagement is, in fact, to pay his own debt to the drawer, the owner of the funds. But it is not perceived how any sound reason can be given why a verbal acceptance, or promise to accept, for the mere accommodation of the

drawer, without funds or value received, should not be treated as within the statute. Browne, St. Frauds, §§ 172, 174; Quin v. Hanford, 1 Hill, 82; Pike v. Irwin, 1 Sandf. 14; Pillans v. Van Mierop, Burrows, 1663; Johnson v. Collings, 1 East, 98; Curtis v. Brown, 5 Cush. 488, and cases cited; Dexter v. Blanchard, 11 Allen, 365. Courts have frequently expressed their dissatisfaction that the rule with regard to implied as well as parol acceptances of bills has been carried as far as it has, and their regret, as stated in Boyce v. Edwards, 4 Pet. [29 U. S.] 122, "that any other act than a written acceptance of the bill had ever been deemed an acceptance." In Townsley v. Sumrall, 2 Pet. [27 U. S.] 170, which decides that a verbal accommodation acceptance is taken out of the statute by the circumstance that the party to whom the promise was made paid money on the strength of it, the whole opinion on this point in the case proceeds upon the assumption, that, without some new and original consideration moving between the parties to the collateral undertaking, a verbal accommodation acceptance is within the statute. The mischief of the rule holding parol acceptances of bills to be good was so apparent, that the subject has been regulated by statute in several of the states, requiring the acceptance to be in writing; and in England, by the statute 1 & 2 Geo. IV. c. 78, an acceptance of an inland bill must be in writing, and on the bill itself. But the reasons given for holding good a parol accommodation acceptance of a bill of exchange do not apply to the case of a bank check. The distinguishing characteristics of checks, as contradistinguished from bills of exchange, are, that they are always drawn upon a bank or a banker; that they are payable immediately on presentment without the allowance of any days of grace; and that they are never presentable for acceptance, but only for payment. Story, Prom. Notes, § 489, and cases cited in note. The promise declared on does not amount to an acceptance. If it be treated either as a promise to accept or a promise to pay, it cannot avail the plaintiffs. No consideration to support the promise is stated, or appears. The checks were not taken on the faith of such promise. The holder gave nothing, and relinquished no advantage for the promise. All the cases, including those before cited, which hold that a promise to accept amounts to an acceptance, put the doctrine on the ground that the holder has taken the bill on the faith of the promise. Coolidge v. Payson, 2 Wheat. [15 U. S.] 66; Schimmepennich v. Bayard, 1 Pet. [26 U. S.] 284; Adams v. Jones, 12 Pet. [37 U. S.] 207; Russell v. Wiggin [Case No. 12,165]. The promise declared on must be considered as one without consideration, and therefore nudum pactum. Overman v. Hoboken City Bank, 1 Vroom [30 N. J. Law] 61, 68. Demurrers sustained.