HENRY CLEWS et al., Respondents, *v.* BANK OF NEW YORK NATIONAL BANKING ASSOCIATION, Appellant.

A bank by the certification of a check drawn upon it guaranties the genuineness of the signature of the drawer, represents that it has funds of the drawer in its hands sufficient to meet it, and engages that those funds shall not be withdrawn to the prejudice of any *bona fide* holder of the check. The certification does not import that the body of the check is

genuine, or that the funds on deposit are absolutely applicable to the payment of the precise check certified.

A draft drawn upon defendant was indorsed by the payee, and mailed to the indorsee ; it was presented to and certified by defendant; it was thereafter altered by raising the amount and changing the date, and the payee, and was offered to plaintiff in payment for certain bonds. Plaintiff sent it by a messenger to defendant's banking-house, who presented it during business hours to the paying teller with a request to know if the certification was good. The teller answered " yes," and thereupon plaintiff accepted the draft. Before this defendant had been notified that the draft had not reached the indorsee, and had been requested to stop payment. In an action to recover the amount of the raised draft, *held* (DANFORTH and TRACY, JJ., dissenting), that the defendant was not estopped by the statement of the teller from denying its liability ; that at the time the draft was presented to its teller defendant owed the plaintiff no duty of active diligence to protect it from the fraud, but was bound only to act in good faith, and in the absence of evidence of bad faith or negligence, plaintiff could not enforce payment.

*Clews* v. *Bank of N. Y. Banking Ass'n* (8 Daly, 476), reversed.

(Argued April 26, 1882 ; decided June 20, 1882.)

APPEAL from judgment of the General Term of the Court of Common Pleas, in and for the city and county of New York, entered upon an order made November 8, 1880, which affirmed a judgment in favor of plaintiffs entered upon a verdict. (Reported below, 8 Daly, 476.)

On the 6th of January, 1879, the Commercial National Bank of Chicago drew its draft upon the defendant, payable to the order of Wirt Dexter, for $254.50, and bearing this number: " No. 73,436." On the 8th day of January, 1879, the defendant was advised by the Commercial National Bank that this draft had been so drawn. On the 15th of January, 1879, it was presented to defendant's paying teller in New York, and was certified by him, and the name, number and amount entered in his certification-book. On the 10th day of February, 1879, the cashier of the Commercial National Bank wrote to the defendant's cashier, stating that said draft was indorsed over to Augusta H. D. Godman, and mailed to her from Chicago, but had not been received ; and concluding: " Mr. Dexter now requests a duplicate, and you will please stop pay-

ment on the original, which you say you have certified." This letter was received by defendant two or three days after its date, and an entry was made by the defendant's registrar in a book kept for such purposes, as follows : " Stop payment; see letter February 10, 1879." On the 3d day of March, 1879, a person, calling himself E. J. Murphy, purchased of the plaintiffs $2,500 in government bonds, and tendered in payment therefor the draft above described, bearing its original number, 73,436, but otherwise altered so that it appeared to be dated February 27, 1879, and to be payable to the order of Henry Clews & Co., and to be drawn for $2,540. Before accepting the draft plaintiffs sent it by their messenger to defendant's bank who testified that he presented it to the paying teller in business hours with the statement that " Henry Clews & Co. want to know if the certification is good ; " the teller looked at it and answered " yes." The messenger, returned the draft to plaintiffs, informed them of the answer given to his inquiry and thereupon plaintiffs accepted the draft and delivered the bonds.

. The court charged among other things in substance that, if the draft was presented to the teller and he answered the query as testified to by the messenger, that plaintiffs were entitled to recover. To this defendant's counsel duly excepted.

*Wheeler H. Peckham* for appellant. Assuming that this action is brought on the draft, plaintiffs must fail for want of title, irrespective of any question of liability of defendant. (*Mass* v. *R. R. Co.*, 11 Hun, 8 ; *Turnbull* v. *Rontey*, 2 Robt. 406 ; 40 N. Y. 456.) The statement of the teller, made after the alteration, that the certification was good, can have no other or greater effect than if the check had been then presented and certified. In such case the bank would not be liable. (*Park Bk.* v. *Ninth Bk.*, 46 N. Y. 77 ; *Marine Bk.* v. *City Bk.*, 59 id. 67 ; *Security Bk.* v. *Bk. Republic*, 67 id. 458.) The omission and neglect of the teller to inform the messenger of the countermanding of the original draft created no liability of defendant. (*Espy* v. *Bank*, 18 Wall. 604 ; 67 N. Y. 463.) Defendant was not liable *ex contractu*. (67 N. Y. 458.)

*Albert A. Abbott* for respondents. The transactions between plaintiffs' messenger and the paying teller amounted to a certification by the defendant of the check as then presented. (*Cont'l Nat. Bk.* v. *Nat. Bk. of Comm.*, 50 N. Y. 575, 580, 581.) The certification of a check is equivalent, in the obligation incurred, to acceptance of a draft. (*Security Bk.* v. *Nat. Bk.*, 67 N. Y. 462; *Merchants' Bk.* v. *State Bk.*, 10 Wall. 604; *Marine Bk.* v. *Nat. City Bk.*, 59 N. Y. 67.) The certification of a check extends to all matters presumptively or actually within the knowledge of the certifying bank, and is an agreement by the bank that as to all such matters the check is good. (*Espy* v. *Bk. of Cincinnati*, 18 Wall. 604, 619; *Security Bk.* v. *Nat. Bk.*, 67 N. Y. 458; *Nat. Park Bk.* v. *Ninth Nat. Bk.*, 46 id. 77; *Marine Nat. Bk.* v. *Nat. City Bk.* 59 id. 67.) Defendant is estopped from disputing its liability on the check. (*Cont'l Bk.* v. *Bk. of Comm.*, 50 N. Y. 575; *Preston* v. *Mann*, 25 Conn. 117; *Man. & Traders' Bk.* v. *Hazzard*, 30 N. Y. 230; *Blair* v. *Wait*, 69 id. 113; *Armour* v. *M. C. R. R. Co.*, 65 id. 116; *Brooks* v. *Martin*, 43 Ala. 360.) The teller was the agent of the bank, for the purposes of the application made. (*Cont'l Nat. Bk.* v. *Nat. Bk. of Comm.*, 50 N. Y. 581.)

Earl, J. The plaintiffs did not obtain lawful title to this check and therefore cannot enforce payment of it against the defendant unless it is in some way estopped from denying its liability to pay.

When the defendant certified the check to be good, it assumed a liability like that of an acceptor of a draft. By the certification it guarantied the genuineness of the drawer's signature, and represented that it had funds of the drawer in its possession sufficient to meet the check, and it engaged that those funds should not be withdrawn from it by the drawer, to the prejudice of any *bona fide* holder of the check; and the certification did not impose upon the defendant any further or greater responsibility. It did not import that the body of the check was genuine or that the funds on deposit with it were

absolutely applicable to the payment of the precise check certified. When, therefore, a check has been raised by some person without authority before certification, the certifying bank cannot be called upon in consequence of its certification to pay the amount of the raised check; and when a bank has thus certified a raised check by mistake and subsequently pays the money thereon without any culpable negligence on its part, it can recover the amount thus paid as money paid by mistake. (*National Park Bank* v. *The Ninth National Bank*, 46 N. Y. 77; 7 Am. Rep. 310; *The Marine Nat. Bank* v. *Nat. City Bank*, 59 N. Y. 67; 17 Am. Rep. 305; *Security Bank* v. *National Bank*, 67 N. Y. 458; 23 Am. Rep. 129; *Espy* v. *The Bank of Cincinnati*, 18 Wall. 604.) Precisely the same rule is applicable to the acceptor of a bill of exchange. By his acceptance he guarantees the genuineness of the drawer's signature, but not the genuineness of any other names upon the paper or of the body of the paper in respect to the date and the amount thereof. If any of the names upon the paper other than the drawer's have been forged, or if the body of it has been altered by increasing the amount thereof, and the acceptor, without culpable negligence, pays the bill by mistake, not knowing of the forgery and alteration, he may recover back the amount paid as money paid by mistake; and whether the forgery and alteration were made before or after acceptance can make no difference.

Here it is conceded that if this check had been raised before the certification the defendant would not have been bound to pay the same, and that if by mistake it had paid the same it could have recovered the money back. But it is claimed that because the alteration and raising of the check took place after the certification a different rule applies, and that the defendant upon the facts of this case was properly held liable.

It is true that defendant when called upon by the plaintiffs' agent before they took the check could have discovered the alteration; but was it bound to discover it and to inform the plaintiffs? The agent of the plaintiffs called upon the defend-

ant during banking hours and presented this check to the paying teller and told him that the plaintiffs wanted to know if the certification was good, and he looked at it and said yes. At that time the bank owed the plaintiffs no duty of active diligence to protect them from the fraud which the holder of the check was trying to perpetrate upon them. It was bound to act in good faith and not to do any thing or say any thing intentionally or carelessly which would mislead them or upon which they could properly rely in taking the check. The inquiry was not whether the body of the check was good or whether that check was certified and was then in the same condition in which it was at the time of the certification; nor was the inquiry whether the check was good for the amount thereof or whether the amount thereof would be paid. The attention of the teller was called to nothing but the certification. It was presented to him while he was very actively engaged in the ordinary business of the bank, paying and certifying checks. There was nothing calling his attention to the number of the check or the amount thereof, and there was nothing requiring that he should stop his business at that time and look at the records of the bank to see whether the check was then in the same condition it was in at the time of its certification. The simple inquiry was, whether the certification was good, and it went no further. Suppose the check had never been certified and the inquiry had then been whether the check was good and the teller had replied that it was, such an answer would in law only have implied that the name of the drawer was genuine, and that there were funds in the bank to meet the check ; and the bank would not have been responsible for any alteration or forgery of the body of the check, and upon this point there is quite direct authority. In *Marine Bank* v. *National City Bank* (*supra*), which was an action to recover back money paid upon a check which was certified after it had been raised, it was held that the certificate in such a case means simply that the drawer's signature is genuine; that he has funds in the bank sufficient to meet the check, and that the bank engages that those funds will not be withdrawn from the bank by the drawer; and

ALLEN, J., writing the opinion, said : " Hence in all reason as well as legally the inquiring of a drawee in respect to a check and the response whether verbally or in writing that it is good must be held, in the absence of circumstances indicating a wider reach of inquiry, and a broader answer, to relate to those facts and those only of which the drawee is presumed to have knowledge, viz.: the two facts before mentioned." In *Espy* v. *The Bank of Cincinnati*, which was a similar action, the facts were that a check was drawn by " S. and M." on the bank for $2,650, in favor of "H.," and was raised to $3,920, and the payee's name changed from " H.," to "E. H. & Co.," and was offered to the latter by a stranger in payment for bonds and gold purchased by him. "E. H. & Co." sent the check for information to the bank, whose teller replied " It is good," or " It is all right ;" and it was held among other things " that when a party to whom such a check is offered sends it to the bank on which it is drawn for information the law presumes the bank has knowledge of the drawer's signature and of the state of his account, and it is responsible for what may be replied on these points, and unless there is something in the terms in which information is asked that points the attention of the bank officer beyond these two matters his response that the check is good will be limited to them and will not extend to the genuineness of the filling in of the check as to payee or amount." Here the inquiry pointed to nothing but the certification. The attention of the teller was called to nothing else, and his response when he said that it was good had reference only to the certification, and imposed no broader or greater liability upon the bank than if the check had then first been presented for certification. In *Security Bank* v. *National Bank* (67 N. Y. 458) which was an action to recover the amount paid upon a raised check, it was held that the plaintiff was not estopped from alleging the forgery by the fact that its teller, at the time the check was presented for certification, upon doubts being expressed in regard to it by the person presenting it, stated that it was all right in every particular, and that it was no part of the teller's duty to give an assurance as to the genuineness of the check

except in respect to the signature of the drawer, and that beyond that the bank was not bound by his representations. ANDREWS, J., writing the opinion, said: "If the reply made to the question put to him was intended as an affirmation of the genuineness of the body of the check it was simply an expression of his opinion and must have been so understood by the person who made the inquiry." The inference here is as strong as in any of the cases cited that the inquiry related only to the genuineness of the certification, because the inquirer had no knowledge whatever of any of the facts that had previously transpired in reference to the check, or that any facts were in the possession of the bank not ordinarily possessed in reference to checks certified by it. It was the ordinary inquiry whether a check was good or whether the certification was good, and the reply was the ordinary reply that it was good, and imposed upon the bank the liability which such a reply under ordinary circumstances imposes. The bank was not called upon for any of the facts in its possession in reference to this draft. But if the inquiry had been broader the bank might have been bound in good faith to have disclosed the facts and might have been chargeable with bad faith or negligence in not disclosing them, and thus made liable upon this check. But here there was no question of bad faith or negligence submitted to the jury, and they were charged that if the check was presented to the paying teller with the inquiry alleged, and he replied that it was good, the bank thereby became absolutely bound to pay the same to the plaintiffs.

If the check had been presented for payment then undoubtedly a different question would have been placed before the paying teller for his consideration. It would then have been his duty to take notice of the facts in the possession of the bank, and payment under such circumstances would have been such a careless act that it would be held that the bank could not recover back the money.

When the paying teller said that the certification was good that declaration did not import that there was the amount of money named in the check in the bank absolutely applicable to the payment of the check, in any other sense than if the

certification had been made after the check had been raised. The certification of a check never imports that there is money in the bank absolutely applicable to the payment of the amount named in the check. On that point it simply imports that the drawer has money to the amount of the check which will not be withdrawn, and which will be paid upon the check if it is properly payable thereon; that is, by the certification the drawee bank becomes responsible to pay the holder whatever is properly due upon the check, and nothing more. The same principle would have to be applied if the defendant had been an individual acceptor of a draft. Then the inquiry would have been, whether the acceptance was genuine or good, and the answer that it was good would not have imported that the draft was good for the amount for which it then appeared to have been drawn. If the acceptor in such a case actually knows that the draft has been raised, and is thus not good for its face, he would be bound, acting in good faith, to disclose that fact. But if at the time he did not know it, and was not aware of any defect in or defense to the draft, his reply that his acceptance was good would not of itself estop him, when called upon for payment, from asserting that the draft had been raised or otherwise altered after his acceptance. He might be engaged in accepting so many drafts, or be so situated or engaged at the time that such an inquiry calling attention to nothing but his signature would not bring to his notice the fact that the draft was not then in the same condition as when his acceptance was written. When such an inquiry is made of an acceptor, all that can be required of him is that he shall answer in good faith. If the holder desires more accurate information his inquiry should be more specific and far-reaching before he can transfer a loss caused to him by the fraud of the person with whom he deals to the innocent acceptor.

Here the teller of the bank made no mistake; he answered truly the question put to him. He did not mislead the plaintiffs. They relied upon the certification which was genuine, and under such circumstances there can be no reason for giving them a remedy against the defendant. They dealt with the

forger, and suffered wrong from him, and there can be no rules of law or justice which should, upon any facts now appearing, visit the consequences of this wrong upon the defendant.

Our conclusion is, therefore, that the judgment should be reversed and a new trial granted, costs to abide events.

DANFORTH, J. (dissenting).   The plaintiffs are brokers, the defendant is a banking corporation, both doing business in the city of New York.   The Commercial National Bank of Chicago drew its check, numbered 73,436, upon the defendant for $254.50, dated January 6, 1879, payable to Wirt Dexter, or order, and by letter advised the defendant thereof.   The latter bank entered it in a book kept by its "registrar" for that purpose.   On the 15th day of January some unknown person presented the check at the defendant's banking-house, and asked its teller to certify it.   He inquired of the "registrar" whether the bank had been advised of the check, and thereupon certified it in the usual manner, and entered it, the name of the drawer, the number and amount of the check so certified, in his official book, and charged up the amount to the account of the drawer.

On the 5th of February the drawer asked to have the check returned, that it might "examine the indorsement.".   It of course could not be sent, for the defendant did not have it, and on the 10th of February the drawer notified the defendant that the check had not reached the person for whom it was intended; that the payee "Dexter" desired a duplicate, and requested the defendant to "stop payment on the original." It then entered in the "registrar's" book, opposite the former entry of the check, "stop payment, see letter February 10, '79," and on the 12th of February asked, through its correspondent, that "Mr. Dexter, or the owner," furnish "a bond of indemnity, and receive pay for the original."   The bond was furnished on the 18th of the same month, and therewith the Chicago bank requested the defendant to credit its "account with the amount of the certified check."   The check was afterward, and on the 2d of March, offered to the plaint-

iffs at their office in payment for government bonds, which the holder professed a desire to buy. It had then been altered so as to bear date February 27, instead of January 6, read payable to the order of Henry Clews & Co., instead of Wirt Dexter, and called for $2,540, instead of $254.50.

The plaintiffs, before concluding a bargain, sent their messenger with the check to the defendant to inquire concerning it. The teller to whom it was presented took it in his hands, and the messenger then said to him, "Henry Clews & Co. want to know if the certification is good." The teller made such examination of the paper as he chose; the witness says "he ran his fingers over where the figures were, turned it over, threw it down, and said, 'yes.'" The messenger returned the check with this answer to the plaintiffs, and they, relying upon it, took it from the holder in payment for $2,500 in government bonds, and gave him the balance, $33.75, in cash. It was then sent through the clearing-house for collection in the usual manner, and on presentation to the defendant payment was refused. Upon these facts the plaintiffs have had judgment, and whether they can retain it or not is the question before us.

It is well settled, *first*, that by certifying in the usual manner a negotiable check, a bank assumes toward the holder of it the relation and liability of an acceptor of a draft. (*Farmers and Mechanics' Bank* v. *Butchers and Drovers' Bank*, 16 N. Y. 125 ; *Security Bank* v. *National Bank*, 67 id. 458 ; 23 Am. Rep. 129 ; *Marine National Bank* v. *National City Bank*, 59 N. Y. 67 ; 17 Am. Rep. 305.) It thereby, as has been said, affirms the genuineness of the signature of the drawer, and that he has funds sufficient to meet it, and engages that they will not be withdrawn to the prejudice of the holder of the check (*Security Bank* v. *National Bank, supra ; Marine National Bank* v. *National City Bank, supra*) ; or as put by SELDEN, J., in 16 N. Y. 130, the act of certification is "answering the supposed inquiry of one about to take the check whether the bank has funds of the drawer to meet it;" and by making it, the bank becomes principal debtor. (*Meads* v. *Merchants' Bank*, 25 N. Y. 147.)

*Second.* The teller is in general the officer who by appointment or usage makes such certificate, and the bank is bound thereby to any person who does in good faith part with value upon the credit of the representation implied in it, whether it is true or false. (*F. & M. Bank* v. *B. & D. Bank,* 4 Duer, 219; affirmed, 16 N. Y., *supra; Irving Bank* v. *Wetherald, etc.,* 36 id. 335; *Pope* v. *Bank of Albion,* 59 Barb. 226; *Morse* v. *Mass. Nat'l Bank,* 1 Holmes, 209; *Willets* v. *Phœnix Bank,* 2 Duer, 121; *Grant* v. *Norway,* 10 C. B. 665; *Meads, etc.,* v. *Merchants' Bank of Albany,* 25 N. Y. 143.) And in this case it appears conclusively that the teller was the proper officer to represent the bank in such a transaction.

*Third.* But the certificate does not imply an engagement or warranty of the genuineness of the body of the check; if therefore there has been any fraudulent alteration prior to certification, it will not be binding, and payment in pursuance of it before discovering the mistake may be recovered back. (*Marine Nat. Bank* v. *Nat. City Bank, supra; Nat. Park Bank* v. *Ninth Nat. Bank,* 46 N. Y. 77; 7 Am. Rep. 310; *Security Bank* v. *Nat. Bank of the Republic,* 67 N. Y. 458.)

The effect of these propositions is to make the bank liable for the act of the teller while engaged in the business of his employment, and the plaintiffs' case is sustained by the principle upon which they rest. The plaintiffs can indeed claim nothing under the simple certification of the check, for they have never become its lawful owner. It was not indorsed by the payee. And although the paper transferred to them had upon it the formal certificate of the bank, it was nevertheless a forged instrument by reason of the several alterations, and therefore invalid. But while in this condition it was, as we have seen, presented to the teller, and by him declared "good." The plaintiffs had a right to understand from this that the check bore the genuine signature of the drawer, that it had already been presented to the bank, and being satisfied that the funds of the drawer were sufficient to meet the sum called for, it had so certified, and furthermore that the certificate then written upon the paper was the

genuine certificate of the bank; and that the funds of the drawer in possession of the defendant were applicable to its payment. The teller has power to give such assurance. Certifying a check, and declaring a certificate already made to be "good," were acts of the same nature made in the exercise of the same authority. The object of the plaintiffs' inquiry was to ascertain the genuineness of the certificate, and the answer of the teller should charge the bank with the same obligation which would bind a natural person, if, in response to the inquiry, he had made the same reply. That obligation would require him to pay the acceptance notwithstanding the alteration.

The question was not "is that your signature," but is the "certification good." As to an individual, the question would have been "is the acceptance yours," or "is it good." And in either case the inquiry goes beyond the handwriting. It relates to the obligation of one who appears liable, and to the sufficiency of means for payment. "I warrant this note good," is a guaranty of its collectibility. (*Curtis* v. *Smallman*, 14 Wend. 231); so the words "Sold A. B. this note, and agree that it is good." (*Cooke* v. *Nathan*, 16 Barb. 342); also "I guaranty this note good." (*Sanford* v. *Allen*, 1 Cush. 473). If an individual had to answer the plaintiff upon this question, no ingenuity could work out a reason why he should not be held. If A., being asked to buy a note purporting to be made by B., should first ask him is this your note? and he should answer as the teller did "Yes," then whether forged in the signature or body of it would make no difference. B. would be required to pay the note. So if B. was the apparent acceptor of the check. The position of the bank is not different. The plaintiffs took the check upon its assurance that the certification was "good," and innocently parted with property to its full amount. If in view of that fact the plaintiffs cannot recover, it must be owing to some technical rule of law which overrides substantial justice and compels the court to shut its eyes and give its judgment against the common sense of the case.

Upon what does the defendant rely? That "the draft was stolen, altered and forged, and then sold to the plaintiffs." It

is evident that these things are true.   But the plaintiffs did not rely on the title thus acquired from the vendor, nor upon the representation made by the face of the draft; they sent to the defendant for information and relied on the answer given by it.   " The check was altered after certification; " this also is true, but it was not altered after the defendant represented that the certification was " good."   The defendant had knowledge of each one of these facts when the question was put to it, and is bound as to the plaintiffs as an individual would be to make its representation true.   Nothing else is material.

In the *Irving Bank* v. *Weatherald* (*supra*), the plaintiff's teller had certified the note of one Wilson " good," and charged it to his account.   It turned out that he had no funds in the bank, but the certifying bank paid the note, then protested it and afterward sued the indorsers and recovered.   In discussing the transaction the court say when the note is presented the teller of the paying bank informs the presenter that the note is " good," in other words, continues the learned judge, informs him " that the maker has the funds in the bank to meet it."   " This information," he adds, ".may be communicated verbally, by letter, or by a memorandum on the note, ordinarily called a certificate."   " The correctness of this certificate is a matter which the certifying bank has the means of knowing and is bound to state correctly."

In *Continental Bank* v. *National Bank of Commonwealth* (*supra*), we have a case which, in principle, is quite decisive of the question before us.   The check of John Ross upon the plaintiff bank, when put in circulation, purported to be certified by the plaintiff's teller in the usual way.   Ross offered it in payment for gold to one Cronise, a broker, and he sent it by his clerks to the plaintiff to see if it was " all right," in the mean time letting the gold go.   The clerk put that question to the teller, and the reply was " yes."   The broker was informed of this reply, and omitted, therefore, to make any effort to regain the gold, as he then might have done.   He deposited the check in the defendant's bank.   It was sent in through the clearing-house, and charged to the plaintiff in favor of the de-

fendant the next day.   It turned out that the certification was a forgery, and the plaintiff sued to recover back the amount of it.   It was conceded that the defendant stood in the place of Cronise, and after judgment in its favor the plaintiff appealed to this court, where the judgment was affirmed, and the rule established that " where a forged certification of a check is presented to the bank upon which the check is drawn, to the teller whose certificate it purports to be, and he pronounces it genuine, he adopts the certification and the bank is bound by it the same as if it was genuine."   This is put upon the doctrine of estoppel, which prevents a party, by whose mistaken act or declaration another has been influenced, from setting up the truth in opposition thereto.   It is discussed in that case at such length, with such variety of learning and such copious illustrations, by the late chief judge of this court, as to relieve us from further labor in regard to it, except to show its application to the case in hand.

This will be easy if we look at the substance of the transaction between the parties, the common and well-understood language used by the defendant and accepted by the plaintiff. But we are here met by the assertion of the learned counsel for the appellant, " that the statement of the teller, made after the alteration, that the certification was good, can have no other effect than if the check had been then presented and certified."   It has already been conceded by the third proposition, above stated, that in such a case the bank would not be bound. The reason of that exemption is stated in the cases there cited.

In *The Marine National Bank* v. *The National City Bank* (59 N. Y. 67; 17 Am. Rep. 305), the plaintiff certified a check which had been altered, on the strength of which the defendant received it on deposit, and the plaintiff paid the amount to it.   On discovering the forgery the plaintiff sued and recovered from the defendant.   The recovery was upheld, the court saying the responsibility growing out of certification is limited to facts within the knowledge of the bank certifying, that is, " whether the drawers of the check have funds sufficient to meet it; and further, to obtain the engagement of the

bank that those funds shall not be withdrawn from the bank by the drawers of the check," and no ground or reason was perceived " for extending the rule to matters not lying especially within the knowledge of the certifying bank."

*Security Bank* v. *National Bank* (*supra*) followed the preceding case in upholding the plaintiff's right to recover back moneys paid upon a check, the amount of which had been raised before certification, and holds that the declaration of the teller, made at the time of certifying, that the check " was correct in every particular," he then referring to the body of the check, and intending to be understood as saying that it was genuine, " was inadmissible to enlarge or vary the legal import of his act."

These cases are not to be questioned. They charged the bank with the consequences of facts within the knowledge of the teller, or which may be presumed to be within his knowledge. To that extent he represents the bank, and it is treated as an individual would be under similar circumstances. The plaintiffs may invoke the rule applied as far back as Mansfield's time, in *Price* v. *Neal* (3 Burr, 1355). It was then held that the drawee of a forged bill of exchange could not, after acceptance and payment, recover back from the indorsee the sum paid. It was then argued for the plaintiff that he paid the money by mistake, " on the supposition that they were genuine bills." On the other hand it was insisted that the payment was not by mistake, but rather owing to the negligence of the plaintiff, who should have inquired and satisfied himself whether the bill was really drawn upon him or not. Lord MANSFIELD said : " It was one of those cases which could never be made plainer by argument." That remark and the principle upon which the case was decided apply here. Indeed, if the defendant in the case before us had paid to the plaintiffs the amount of the check, and then sued to recover back the money, the two cases would have been on all fours.

The position of the defendant, when answering the inquiry addressed to its teller, is unlike the situation it occupied when it certified the check. Then it only knew the signature of the drawer, and the amount of the drawer's money in its hands.

Its certificate was by construction limited to those facts. Whether the body of the check was genuine or a forgery was a fact as well known to the check-holder as to the bank. But by certifying the check it substituted its own liability for that of the drawer. Indeed, the holder by taking the certificate released the drawer, for the check called for money, and the holder accepted a promise. When, therefore, a third party called upon the bank and asked whether the certification was good, another fact was called for also within the especial knowledge of the bank, and altogether unknown to the enquirer, whose ignorance indeed led to the question, viz.: whether the certification on the paper was that of the bank; not its signature merely, but whether it had certified to the truth of the facts then appearing on the paper: viz., the signature of the drawer, and that the drawer had in its, the bank's, custody the money called for by the face of the check, and that the money was applicable to its payment. In view of the then relation of the parties, this was the vital fact to know whether the defendant was in fact the acceptor, and had assumed the payment of that check, and was liable to respond to a demand for $2,540. This is implied in the question, and so it must have been understood by the teller.

The check was negotiable. The defendant appeared upon it as "acceptor," or principal debtor. It was presented in the name of a firm of well-known brokers, with an inquiry indicating an interest which the teller alone could satisfy. He could not be ignorant that checks might be, and sometimes were, altered after certification. I have referred above to the means provided to guard the bank from error in its certificates. There is evidence from the teller showing that he had the means at hand for guarding against the very fraud which this case exhibits. If called upon to pay a certified check, he says he "never did so without referring to the book to see if it agrees with the amount it has been certified for." This was now the very question he undertook to answer. His book contained positive information, not only that the check did not agree with the certification, therefore that it was not good, but

also it contained direction not to pay even the amount certified, and that the amount had already been paid back to the drawer. In these respects then he misinformed the plaintiff. The bank had not certified for the amount called for, and no funds were retained to meet the check. What the fact was, whether the certification was good, could only be ascertained by asking the teller. (16 N. Y. 125; *In re Land Credit Co.*, L. R., 4 Ch. App. 460.) It was not only his duty, therefore, to know these facts, he did know them, and acquired his information while exercising the ordinary powers and functions of his office. The act of communication with the plaintiff in regard thereto was an official act, also within the limit of the power delegated to him, and by its exercise the bank was bound. (*Fleckner* v. *Bank of U. S.*, 8 Wheat, 338; *E. R. Nat. Bank* v. *Gove*, 57 N. Y. 597; *Bank of Monroe* v. *Field*, 2 Hill, 445; *Farmers & Mechanics' Bank* v. *B. & D. Bank*, 14 N. Y. 623.) It was the declaration of the teller or his negligence which put the paper in circulation, and public policy, and a due regard to the integrity of commercial transactions, required that the defendant, whose officer he was, should redeem it.

The judgment should, therefore, be affirmed, with costs.

All concur for reversal, except DANFORTH and TRACY, JJ., dissenting.

Judgment reversed.