HENRY CLEWS et al., Respondents, v. THE BANK OF NEW YORK NATIONAL BANKING ASSOCIATION, Appellant.

A draft drawn upon defendant was indorsed by the payee and mailed to the indorser; it never reached him, but fell into the hands of some person who presented and procured it to be certified by defendant; a memorandum showing the number and amount of the draft and that it was certified was entered upon a register kept by defendant of bills drawn upon it by the drawer of this one. The drawer notified defendant by letter of the miscarriage of the draft and not to pay it. Thereupon there was added to the memorandum the words, "stop pay't; see letter." Subsequently the draft, which had been altered by raising the amount and changing the date and name of payee, was offered to plaintiffs in payment for certain bonds. In an action to recover the amount of the draft as raised, aside from proof of these facts, plaintiffs' evidence was to the effect that they sent the draft to defendant's banking-house by a messenger, who presented it at the window of the paying-teller stating that plaintiffs wished to know whether the certification was good. The person in

attendance, without referring to the register, answered " yes." Upon being advised of this plaintiffs received the draft in payment for the bonds. In an action to recover the amount of the draft as raised, *held,* that the evidence was sufficient to justify a finding of negligence on the part of defendant in failing to disclose the facts to plaintiffs' messenger and to authorize a recovery.

Also, *held,* that a refusal of the court to charge that the teller was not the agent of the bank for the purpose of giving information, other than as to genuineness of signature of drawer and acceptor, was not error.

*Security Bank* v. *Nat. Bank of Republic* (67 N. Y. 458) distinguished.

One of the plaintiffs, as a witness, was asked on cross-examination: " What do you understand to be the contract of certification of a check or draft?" This was objected to and excluded. *Held,* no error.

Reported on former appeals, 89 N. Y. 418; 105 id. 398.

(Argued March 18, 1889;, decided March 26, 1889.)

APPEAL from judgment of the General Term of the Court of Common Pleas in and for the city and county of New York, entered upon an order made April 2, 1888, which affirmed a judgment in favor of plaintiffs, entered upon a verdict.

This action was brought to recover the amount of a draft. The material facts are stated in the opinion.

*Wheeler H. Peckham* for appellant. The question on the trial having been treated as a question of law by the parties and by the court, and the defendant not having claimed that the question was one of fact, and not having raised it, it could not have been raised by any request defendant made or by any exception to the charge that defendant took. (*Dodge* v. *Havemeyer*, 4 N. Y. State Rep. 562; *Waters* v. *Marrin*, 13 Daly, 57; *O'Neil* v. *James*, 43 N. Y. 85, 93; *First Nat. Bk.* v. *Dana*, 79 id. 109; *Stone* v. *Flower*, 47 id. 568, 569; *Muller* v. *McKesson*, 73 id. 195; *City* v. *Copeland*, 106 id. 501.) A bank by certifying a check in the usual form simply certifies to the genuineness of the signature of the drawer and that he has funds sufficient to meet it, and engages that those funds will not be withdrawn from the bank by him; it does not warrant the genuineness of the body of the check as to

payee or amount. (*Marine Bk.* v. *City Bk.*, 59 N. Y. 67; *Price* v. *Neal*, 3 Burr. 1354; 67 N. Y. 463.) When one states a thing to another with a view to influence another to alter his position, or knowing that as a reasonable man he will alter his position, then the person to whom the statement is made is entitled to hold the other bound, and the matter is regulated by the state of facts imparted by the statement. (*Anderson* v. *Reid*, 106 N. Y. 367, 368; *Knight* v. *Wiffen*, L. R., 5 Q. B. 660; 50 N. Y. 575, 581.) The payees of a check are presumed to have dealt directly with and to have received the check from the maker, and are presumed to know whether they are rightly named as payees. (*White* v. *Continental Bk.*, 64 N. Y. 316.) The plaintiffs, as holders of the bill, and claiming to be entitled to receive the amount thereof from the drawees, were held to a knowledge of their own title. (*Susquehanna Bk.* v. *Loomis*, 85 N. Y. 211; *Turnbull* v. *Routey*, 40 id. 456.) The case presented no question for the jury. (*Continental Bk.* v. *Bk. of Comm.*, 50 N. Y. 575; *Anderson* v. *Read*, 106 id. 343, 352; *Macullon* v. *McKinlay*, 99 id. 357; *Kelly* v. *Burroughs*, 102 id. 93; *Ruiz* v. *Renauld*, 100 id. 256; *Dwight* v. *Ins. Co.*, 103 id. 341; *Brady* v. *Cassidy*, 104 id. 155.) The testimony of Sherman, the teller, not having been contradicted by any evidence in the case, nor being inconsistent with any fact, it required belief. (*Kelly* v. *Burroughs*, 102 N. Y. 93; *Searles* v. *M. R. R. Co.*, 101 id. 661.) Plaintiffs must allege and prove that the defendant made the false representation with intent to deceive, and knowing it to be false or assumed, or intended to convey the impression that he had actual knowledge of the truth of the representation, though conscious that he had no such knowledge. (*Macullon* v. *McKinley*, 99 N. Y. 358; *Wakeman* v. *Dalley*, 51 id. 34, 35; *Meyer* v. *Amidon*, 45 id. 169, 175; *Duffany* v. *Ferguson*, 66 id. 482–485; *Marsh* v. *Falker*, 40 id. 562; Bigelow on Estoppel [4th ed. 1886], 516, 588; *Freeman* v. *Cooke*, 2 Ex. 654; *Swan* v. *North British Co.*, 7 Hurl. & N. 603; 2 Hurl. & C. 175; *Bank* v. *Evans*, 5 H. L. Cas. 389.) The allegations in the complaint and the facts

proved as to the correspondence between the Chicago Bank and the defendant do not take the place of allegation and proof that the defendant knew that his statement was false, or assumed knowledge of facts with the consciousness that he had no knowledge. (*Kelly* v. *Solari*, 9 M. & W. 54 ; 2 Smith L. Cas. 237 [Am. note] 403 ; *U. N. Bk.* v. *S. N. Bk.* 43 N. Y. 454; *Canal Bk.* v. *Bk. of Albany*, 1 Hill, 287 ; *Security Bk.* v. *National Bk.*, 67 N. Y. 458; *Second Nat. Bk.* v. *Walbridge*, 19 Ohio St. 419 ; *Spencer* v. *Carr*, 45 N. Y. 407.)

*Albert A. Abbott* for respondents.    The law of the case having been fully settled by this court upon the two former appeals, the question will not be re-opened. (*Clark* v. *Keith*, 106 U. S. 464.)    The plaintiffs parted with value to the full amount of the check, solely in reliance upon defendant's assurance that the check as presented was valid ; and this assurance having been given through the culpable negligence of the defendant's teller it is estopped from denying its liability for the loss occasioned by its own act.    (89 N. Y. 418 ; 105 id. 398 ; *Central Bk.* v. *N. Bk. of Commerce*, 50 id. 575 ; *Security Bk.* v. *Nat. Bk.*, 67 id. 462; *Merchants' Bk.* v. *State Bk.*, 10 Wall. 604 ; *Marine Bk.* v. *Nat. City Bk.*, 59 N. Y. 67; *Espy* v. *Bk. of Cincinnati*, 18 Wall. 604 ; *Nat. Park Bk.* v. *Ninth Nat. Bk.*, 46 N. Y. 77 ; *Preston* v. *Mann*, 25 Conn. 117 ; *M. & T. Bk.* v. *Hazzard*, 30 N. Y. 230 ; *Blair* v. *Wait*, 69 id. 113 ; *Armour* v. *M. C. R. R. Co.*, 65 id. 116 ; *Brooks* v. *Martin*, 43 Ala. 360 ; *F. & D. N. Bk.* v. *B. & D. Bk.*, 16 N. Y. 125 ; *Meads* v. *Merchants' Bk.*, 25 id. 147 ; *Irving Bk.* v. *Wetherald*, 36 id. 335 ; *Pope* v. *Bk. of Albion*, 59 Barb. 226 ; *Morse* v. *Mass. Nat. Bk.*, 1 Holmes, 209 ; *Willets* v. *Phœnix Bk.*, 2 Duer, 121 ; *Grant* v. *Norway*, 10 C. B. 665 ; *Price* v. *Neal*, 3 Burr. 1355 ; *In re Land Credit Co.*, L. R., 4 Ch. App. 460 ; *Fleckner* v. *Bk. of U. S.*, 8 Wheat. 338 ; *E. R. Nat. Bk.* v. *Gove*, 57 N. Y. 597; *Bk. of Monroe* v. *Field*, 2 Hill, 445.)

Follett, Ch. J. On January 6, 1879, the Commercial National Bank of ·Chicago drew a sight bill on the defendant, of which the following is a copy:

" $254.50.                      Duplicate unpaid.

## "COMMERCIAL NATIONAL BANK OF CHICAGO.

"Chicago, Ill., *Jan.* 6, 1879.

Pay to the order of Wirt Dexter two hundred and fifty-four $\frac{50}{100}$ dollars.

"To the Bank of New York National Banking Association, New York. No. 73436.

"T. S. EAMES.
"*A. Cashier.*"

The payee indorsed and mailed the bill to Augusta H. D. Godman at the city of New York. . The bill never reached the indorsee, but in some way fell into the hands of a knave. January fifteenth, this genuine bill was presented to William H. Meany, the paying teller of the drawee, who certified it by cutting through it near the right-hand end with a stamp, the words " Certified — Bank of New York, N. B. A." and signing " Meany." A memorandum of the bill was entered upon the register kept of bills drawn by the drawer upon the drawee, showing its number, amount and that it was certified. Febuary tenth the drawer notified the drawee that the bill had not come to the hands of the indorsee, and not to pay it. This notification was received February twelfth, and thereupon the drawee added to the previous entry descriptive of the bill, made in its bill register, the words: " Stop pay't, see letter of Feb. 10, 1879."

March 3, 1879, a stranger to Henry Clews & Co., entered the banking house of that firm in the city of New York and purchased $2,500 par value of United States four per cent bonds, and offered in payment an instrument in the form of a bill of exchange of which the following is a copy:

"$2,540.                              Duplicate unpaid.

"COMMERCIAL NATIONAL BANK OF CHICAGO.

"CHICAGO, ILL., *Feb.* 27, 1879.

"Pay to the order of Henry Clews & Co., twenty-five hundred and forty dollars.

"To the Bank of New York National Banking Association, New York.    No. 73436.

"T. S. EAMES.

"*A. Cashier.*"

Across this bill and near the right-hand end were cut the words: "Certified — Bank of New York, N. B. A.," which was signed "Meany." Before receiving the bill in payment for the bonds, the plaintiffs sent it (March 3, 1879) to the defendant for the purpose of learning whether it was good. Precisely what was said by the plaintiffs' messenger to the defendant's teller and by him to the messenger was an issue of fact which was submitted to the jury. Upon the return of the plaintiffs' messenger the bonds were delivered to the purchaser with the plaintiffs' check for $33.75, the difference between the purchase-price of the bonds and the bill. March fifth the bill for $2,540 was presented to the defendant for payment, which was refused upon the ground that it was a forgery. It is conceded that the original bill (first above set forth) was changed from $254.50 to $2,540, Henry Clews & Co. substituted in the place of Wirt Dexter, as payees, and the date changed from January 6, 1879, to February 27, 1879.

This action was brought to recover the amount of the bill from the defendant upon two grounds: (1.) That the usual liability incurred by a certifying drawee was enlarged by the interview of March 3, 1879, between plaintiffs' messenger and defendant's paying teller; (2.) that the defendant was guilty of actionable negligence through the statement of its paying teller of March 3, 1879, to plaintiffs' messenger, and in not stating to him the facts within the knowledge of the defendant's officers and the paying teller.

Upon the trial of an issue of law raised by a demurrer inter-

posed to the complaint, the demurrer was overruled and leave given to the defendant to answer. (8 Daly, 476.) Upon the first trial of the issue of fact the plaintiffs had a verdict, upon which a judgment was entered, which was affirmed by the General Term without an opinion, but was reversed by the Court of Appeals. (89 N. Y. 418.) Upon the second trial of the issue of fact the plaintiffs were nonsuited and the judgment entered thereon was affirmed by the General Term without an opinion, but was reversed by the Court of Appeals. (105 N. Y. 398.) Upon the third trial the plaintiffs had a verdict, upon which a judgment was entered, which was affirmed by the General Term, from which judgment of affirmance this appeal was taken. Upon the trial plaintiffs' messenger testified that, in obedience to his instructions, he handed the bill to some person standing at the paying teller's window in defendant's bank and said: "Henry Clews & Co. want to know whether the certification of this check is good;" that the person took the bill, rubbed his thumb over the corner where the amount had been written in, turned it over and looked at its back, said "yes" and handed it to the messenger, who returned to the plaintiffs with the information and bill. On the contrary, Mr. Sherman, defendant's certifying teller, testified that the bill was presented to him by the messenger who asked "if the certification was correct," and he, Sherman, replied "that it was." It is conceded that whoever answered the inquiry of the messenger did so without referring to the register of bills whereon was entered the number and amount of the original bill with the direction not to pay it, and that the numbers of the original bill and the forged bill were identical.

Four questions of fact were submitted to the jury: (1.) Whether plaintiffs' messenger presented the bill to defendant's paying teller as asserted by the plaintiffs, or to defendant's certifying teller as asserted by the defendant? The jury was instructed, that if this question was found against the plaintiffs they could not recover. (2.) "If, however, you are satisfied that this question was asked by McCormack (plaintiffs'

messenger), at the paying teller's window, then you are to determine whether or not, as a matter of fact, the inquiry which he says he made of the person who occupied the position of defendant's paying teller, was understood by the latter as referring to the validity of the certification at the time of the inquiry, as distinguished from the genuineness of the marks of certification only; and, also, whether the answer made by the paying teller, or the person acting as paying teller, to Mr. McCormack referred to the check or draft, No. 73436 as certified, instead of the mere marks of certification." The court charged in respect to this issue: "If the question asked by plaintiffs' messenger was susceptible of two interpretations, one making the question refer to the certification only, and the other making it refer to the whole check, and the person of whom the question was asked, understood it as referring to the marks of certification only, the plaintiffs cannot recover." (3.) "If you believe from the evidence that the plaintiffs were guilty of negligence in not informing the defendant at the time of asking the question as to the circumstances under which the plaintiffs received the check, or, in not asking more definitely for the information they desired, and such negligence contributed to the result, then the plaintffs cannot recover." (4.) "Whether or not the defendant was culpably negligent under the circumstances disclosed by the evidence in this case in answering the question which McCormack (plaintiffs' messenger) says he asked at the paying teller's window, without referring to the registration book and the book of stop payments which referred to the draft in question by its number, and would have disclosed the fraud. In that connection, I will also charge you, that if the defendant was guilty of no want of ordinary care in respect to the answer given to the plaintiffs' messenger, the plaintiffs cannot recover, for the inquiry was merely about the certification marks."

The remarks of the court, which accompanied the submission of these issues to the jury, were not unfavorable to the defendant, but all of the issues were found in favor of the plaintiffs.

Upon the first trial the court instructed the jury, in effect, that if plaintiffs' messenger asked defendant's paying teller whether the certification was good, and the teller answered in the affirmative, the answer of itself, as matter of law, rendered the defendant liable. For this error, it is said (in 105 N. Y. 401), the first judgment was reversed.

In considering this case when it was before the Court of Appeals the second time, it was said: "It by no means follows, however, that that decision (89 N. Y. 418) established that the defendant was absolutely exempt from liability, and could not be held responsible even if the defendant, at the time the teller said the certification was good, had notice that it had ceased to be good by reason of the subsequent alteration of the draft, or had in its possession the means of ascertaining that fact, and the jury should find that it was guilty of culpable negligence, under the circumstances, in omitting to resort to those means of information, and thus misled the plaintiffs to their injury." (105 N. Y. 402.) * * * Again, it was said: "Without regard to the admissibility of evidence of usage, the plaintiffs had a right, under the circumstances offered to be proved, to go the jury on the question whether the inquiry made of the teller was understood by the parties as referring to the validity of the certification at the time it was exhibited to the teller, or only of the genuineness of the marks of certification, but also on the question whether it was culpably negligent under the circumstances to answer the question without referring to the certification book and the book of stop payments, which referred to the draft in question by number and would have disclosed the fraud." (105 N. Y. 403.) The fair import of this opinion, interpreted by the judgment rendered, is that the plaintiffs could recover if the jury should find, upon sufficient evidence, that the defendant was culpably negligent to the injury of the plaintiffs in not referring to its register of certified bills and the letter thereon referred to and reporting to the messenger that bill No. 73436 drawn by the Commercial Bank of Chicago was drawn for $254.50, not for $2,540; that it was certified by this bank for $254.50 January

15, 1879, more than forty days before the date of No. 73436 now presented by you, the drawer reports that it has been lost and its payment has been stopped. Defendant's cashier testified that all of these facts could have been learned from the register and the letter, all of which facts were at one time known to the paying teller, but were evidently not in mind at the time of the interview with plaintiffs' messenger.

Whether the defendant was negligent in this respect was submitted to the jury and found for the plaintiffs, and under the decision of the Court of Appeals it is sufficient to sustain the judgment, unless some error against the defendant was committed in receiving or rejecting evidence, or instructing or refusing to instruct the jury. The court was asked to charge, " that if the jury believe from the evidence that at the time the draft was presented at defendant's bank the person to whom it was presented did not know that it was the same draft payment of which had been stopped, or that it was an altered draft, but supposed it a genuine draft and answered the question in good faith, the plaintiffs cannot recover." This is not the test laid down by the Court of Appeals. The court expressly held that the plaintiffs need not go so far as to establish that the defendant or its paying teller was guilty of an intent to defraud the plaintiffs, but that a recovery might be had if the paying teller was negligent in failing to ascertain and disclose the facts to the plaintiffs' messenger. This is not an action for deceit, and the plaintiffs do not assert in their complaint or evidence that any one of the defendant's employes intentionally deceived the plaintiffs; and the instructions, asking that deceit must be established, were properly refused.

The appellant urges, in its tenth point, " that the court erred in refusing to charge that the teller was not the agent of the bank for the purpose of giving information other than as to genuineness of signature of drawer and acceptor." We are not referred to the folio where this request is found in the record, nor have we found it. *The Security Bank* v. *National Bank* (67 N. Y. 458) is cited in support of the

position that the refusal of this request, if made and refused, is error. In the case cited, the plaintiff did not seek to recover upon the ground that the defendant was guilty of actionable negligence, but upon the contract of certification, which the plaintiff sought to enlarge by proving that the certifying teller gave the cotemporaneous assurance that the bill was "correct in every particular," and the authority is not germane to the question here discussed.

The question put to Mr. James B. Clews, upon cross-examination, "What do you understand to be the contract of certification of a check or draft?" did not call for a relevant fact, and was properly excluded. He was not one of the parties to the contract, and his understanding of the effect of such contracts was not admissible for or against the plaintiffs. (*Security Bank* v. *National Bank*, 67 N. Y. 458.) The question did not call for the witness' understanding of the effect of the certification in question or for his understanding of the information received from the messenger, but for his understanding of contracts of certification.

The remaining exceptions seem to call for no consideration. The judgment should be affirmed, with costs.

All concur.

Judgment affirmed.