THE SECURITY BANK OF NEW YORK, Respondent, *v.* THE NATIONAL BANK OF THE REPUBLIC, Appellant.

In an action by a bank to recover the amount paid upon a raised check which had been certified by it, evidence that by the custom and common understanding of banks and merchants the words "certified" at the time of the certification, when used in the certification of checks, is construed to import an obligation on the part of the certifying bank to pay the amount stated in the check, notwithstanding the body of it was forged, is inadmissible.

The plaintiff in such an action is not estopped from alleging the forgery by the fact that its teller at the time the check was presented for certification upon doubts being expressed in regard to it by the person presenting it, stated that it was right in every particular. It is no part of a teller's duty to give an assurance as to the genuineness of a check, except in respect to the signature of the drawer; and beyond that the bank is not bound by his representations.

(Argued December 1, 1876; decided December 12, 1876.)

APPEAL from judgment of the General Term of the Court of Common Pleas for the city and county of New York, affirming a judgment in favor of plaintiff entered upon a verdict.

This action was brought to recover, as for money paid by mistake, the amount paid by plaintiff to defendant upon a check which had been altered and raised after issue.

The check was drawn upon plaintiff by H. J. Cipperly & Co., to the order of J. Cox, for twenty-four dollars and sixteen cents. The check was altered by erasing the amount, the date and the name of the payee. The amount was raised to $4,222.75, and the name of Duff & Tienken entered as payees. The check thus altered was offered to Duff & Tienken, who were gold brokers, in payment for gold. One of said firm testified that he went with the check to plaintiff's bank, told the teller that he did not like the looks of the messenger who brought the check to them; that he was a total stranger, and that "he wanted the teller to be very particular before certifying the check; that he Duff had a doubt in his mind about it, and he wanted to be assured that the check was genuine in every particular." The teller examined it, certified it, and handed it back, saying, "you need not have the slightest doubt about that check, it is correct in every particular; the drawer is a director of this bank." The check was thereupon received by Duff & Tienken in payment for the gold.

On the trial defendant offered to "show, by the testimony of various persons engaged in the business of bankers and merchants and dealers with banks, that the word 'certified,' as used upon the check now in suit, at the time of the certification, was commonly understood to import an obligation on the part of the bank to pay the amount expressed upon the face of the check so certified, notwithstanding that it may have been forged in the body;" also that, "under such circumstances, it was the custom among banks, and merchants and dealers with banks in the city of New York, to so construe the word 'certified,' indorsed upon the check, as to import an obligation to pay the amount, as stated in the check, when it was certified, notwithstanding the body of the check was forged." This evidence was objected to and excluded, and defendant's counsel duly excepted.

Defendant's counsel asked the court to charge that if Duff & Tienken relied upon the assurances of the teller, and parted with the gold upon the faith of such assurances, plaintiff was estopped from questioning the genuineness of the check. The court refused so to do, and said counsel duly excepted. Said counsel also asked the court to submit to the jury the question whether the teller made the representations, and whether Duff & Tienken relied upon them in parting with the gold. Plaintiff's counsel conceded, for the purposes of the trial, that the transaction when the check was certified was as stated by the witness. The court refused so to do, and directed a verdict for plaintiff for the amount claimed. Defendant's counsel duly excepted. A verdict was rendered accordingly.

*Wheeler H. Peckham* for the appellant. The court erred in excluding evidence of the meaning of the term "certified." (*Marine Bk.* v. *City Bk.*, 59 N. Y., 74; *Downs* v. *Sprague*, 2 Keyes, 57; *Grant* v. *Maddox*, 15 M. & W., 737; *Gray* v. *Harper*, 1 Story, 574; *Child* v. *Sun Mut. Ins. Co.*, 3 Sand., 26; *Mackenzie* v *Dunlop*, 3 Macy H. L. Cas., 22; 2 Jur. [N. S.], 957; *Juggomohun* v. *Manickehund*, 7 Moo. Ind. App., 263; *Adams* v. *Peters*, 2 C. & K., 723.) Plaintiff was estopped by what occurred at the time of the certification from denying the validity of the check. (*Brown* v. *Bowen*, 30 N. Y., 541; *Plumb* v. *Ins. Co.*, 18 id., 392.)

*Charles Tracy* for the respondent. The evidence tending to show the alleged customary interpretation of the word "certified," as used in certifying checks, was properly excluded. (*Marine Bk.* v. *City Bk.*, 59 N. Y., 67; *Bargett* v. *Or. Mut. Ins. Co.*, 3 Bosw., 385, 397; *Many* v. *Beekman Iron Co.*, 9 Paige, 188, 195; *Higgins* v. *Moore*, 34 N. Y., 417, 422; *Lawrence* v. *Maxwell*, 53 id., 19, 21; *Markham* v. *Jaudon*, 41 id., 235, 245; *Walls* v. *Bailey*, 49 id., 470; *Higgins* v. *Moore*, 34 id., 417, 425; *Wheeler* v. *Newbould*, 16 id., 392, 402; *Groat* v. *Gile*, 51 id., 19, 21; *Walls* v. *Bailey*, 49 id., 464, 474; *Sip-*

*perley* v. *Stewart,* 50 Barb., 68 ; 2 Pars. on Con., 53; 2 Greenl. Ev., § 251.) It was not within the province of the teller to give assurances that the check was correct in every particular. ( *Watson* v. *Bennett,* 12 Barb., 196, 200 ; *Barrit* v. *Austin,* 21 id., 241, 242; *U. S.* v. *City Bk. of Columbus,* 21 How. [U. S.], 356, 364, 365.)

Andrews, J. In the *Marine National Bank* v. *The National City Bank* (59 N. Y., 67), it was decided that a bank by certifying a check in the usual form simply affirms the genuineness of the signature of the drawer, and that he has funds sufficient to meet it, and engages that they will not be withdrawn to the prejudice of the holder of the check, but does not warrant the genuineness of the body of the check.

Accordingly it was held that the plaintiff's bank which had certified and afterwards paid to the defendant's bank a forged check, altered before certification by raising the amount and changing the date and name of the payee, could recover back the amount paid as for money paid by mistake. The case is decisive of the present one, unless the court erred in rejecting the proof offered, to show that at the time of the certification of the checks in question, the word *certified,* when used in the certification of checks, was by the custom and common understanding of banks and merchants construed to import an obligation on the part of the certifying bank to pay the amount stated in the check notwithstanding the body of the check was forged or unless the plaintiff was estopped from alleging the forgery, by the circumstance that the teller of the plaintiff, when the check was presented for certification, was informed by the payee who presented it, that he did not like the looks of the messenger who brought the check and had a doubt about it, and wanted to be assured that it was right " in every particular," and that the teller then examined the check, and certified it, assuring the payee at the time that he need not have the slightest doubt about it, and that it was correct in every particular. We are of opinion that the offer to show by bankers and merchants the meaning

of the word " certified," and that when used in transactions like this it is understood to import an absolute obligation by the certifying bank to pay the check, although the amount had been fraudulently raised, was properly rejected. The only duty assumed by a bank on receiving the money of a depositor is to take care of the fund, and pay it over according to his direction. It owes no duty to the drawer or holder of a check except the duty to make present payment of the check out of the funds of the drawer on presentation.

Checks in theory are presented for payment and not for acceptance but the practice of certifying checks has grown up, and of late years has been largely extended, and the same effect has been given to the act of certification as to an acceptance of a bill of exchange. The manifest object of a certification is to indicate the assent of the certifying bank to the request of the drawer of the check that the drawee will pay to the holder the sum mentioned and this is what an acceptor does by his acceptance of a bill. As long ago as the case of *Robson* v. *Bennett* (2 Taunt., 388), it was said by Lord MANSFIELD that the marking of a check by the drawee on presentation was similar to the accepting of a bill and, he adds, " he admits hereby assets and makes himself liable to pay."

In *Merchants' Bank* v. *State Bank* (10 Wall, 604), the court say that " by the law merchant of this country, the certificate of the bank that the check is good is equivalent to acceptance," and the same language, in substance, is used by this court in *The Marine Bank* v. *The National City Bank*. There are many points of resemblance between a check and a bill of exchange, and in our courts and the courts of England, checks are often spoken of as bills of exchange. (*Harker* v. *Anderson*, 21 Wend., 372; *Little* v. *The Phœnix Bank*, 2 Hill, 425; *Keene* v. *Beard*, 8 C. B. [N. S.], 372; 2 Pars. on Bills, 58.)

The nature and meaning of the contract, evidenced by the certification of a check, was clearly defined by law, when the plaintiff certified the check in question. By the law as thus declared, the plaintiff, upon the certification of the check, became liable for its payment with the obligation of an

acception of a bill; and this was the extent of the obligation into which he entered, according to the legal effect and interpretation of the contract. The offer to prove that the contract of certification by the understanding of the bankers and merchants, had a larger scope and meaning than it had by settled legal construction was inadmissible. (*Bargett* v. *Oriental Mutual Ins. Co.*, 3 Bos., 385; *Higgins* v. *Moore*, 34 N. Y., 417; *Lawrence* v. *Maxwell*, 53 id., 19; *Wheeler* v. *Newbould*, 16 id., 392.)

The indorsement made by the plaintiff's bank was simply and exclusively a certification of the check, and it is bound only to such obligations as that act implies. In *The Marine Bank* v. *The National City Bank*, this court found no difficulty in interpreting the contract arising from a certification of a check without the aid of extrinsic evidence. That an acceptor of a bill of exchange which, after acceptance, was forged by raising the amount and changing the name of the payee, may recover back the money paid by him on the acceptance, was decided in *The Bank of Commerce* v. *The Union Bank* (3 N. Y., 230), and as, by analogy, the same right exists in the certifying bank to recover back money paid upon a check, if it turns out that the filling in was forged, there is no ground for claiming that the plaintiff was estopped from showing the body of the check to be a forgery by the verbal assurance of the teller to the payee of the check, that it was correct in every particular. It was no part of the teller's duty to give an assurance as to the genuineness of the check, except in respect to the signature of the drawers. If he went beyond this his representation did not bind the bank. Moreover, if the reply made to the question put to him was intended as an affirmation of the genuineness of the body of the check, it was simply an expression of his opinion, and must have been so understood by the person who made the inquiry.

The judgment should be affirmed.

All concur.

Judgment affirmed.