(22 Misc. Rep. 722.)

OPPENHEIM v. WEST SIDE BANK.

(Supreme Court, Appellate Term.    February 28, 1898.)

1. CHECKS—GENUINENESS—WARRANTY.
    An indorser and holder of a check, claiming the amount thereof from the drawee, warrants the genuineness of the instrument and all preceding indorsements.

2. SAME—NOTICE TO DRAWEE—PAYMENT.
    The drawee of a check, by paying the check, vouches for the genuineness of the signature, but cannot be held thereby to a knowledge of a want of genuineness of any other part, or of the bona fides of the holder.

3. BANKS AND BANKING—COLLECTIONS—TITLE.
    Title does not vest in a bank correspondent receiving a check for collection in the usual course of business.

4. SAME—RAISED CHECKS—REIMBURSEMENT.
    Money paid on a raised check may be recovered, where the one seeking recovery has not by negligence prejudiced the rights of the person from whom recovery is sought.

5. SAME—ESTOPPEL IN PAIS.
    A raised check having been deposited, credited to depositor, and collected from the drawee, the depositor was informed by the bank that the check was "all right," whereupon he paid a sum due the person from whom he received the check. Held, that the bank was not estopped from recovering the amount by mistake credited to the depositor on account of the forged check, of which the bank afterwards received notice.

6. SAME—NOTICE OF FORGERY—NEGLIGENCE.
    Where a person who received the proceeds of a raised check was given personal notice by the bank accepting the check from him on the day it received notice of the forgery, and by letter three days subsequent thereto, the bank was not guilty of negligence in giving such notice.

7. SAME—DAMAGES.
    Negligence of the indorsee in giving notice of the raising of a check will not bar recovery by him from the indorser, who received the proceeds of the check, unless the indorser was damaged thereby.

Appeal from Eighth district court.

Action by Robert Oppenheim against the West Side Bank for a balance due on deposit. Judgment for plaintiff. Defendant appeals. Reversed.

Argued before BEEKMAN, P. J., and GILDERSLEEVE and GIEGERICH, JJ.

Robert C. Beatty and Deyo, Duer & Bauerdorf, for appellant.
Myer J. Stein, for respondent.

GIEGERICH, J.　On the 4th day of June, 1897, R. M. Braithwait & Co., of Philadelphia, in the state of Pennsylvania, issued their check upon the Northwestern National Bank of the same place for the sum of $8.50, payable to the order of one F. R. Lee. The body of the check was subsequently altered by adding the letter "y" to the word "eight" and a cipher after the numerical figure "8," thus raising the amount to $80.50, and, as altered, it was delivered by the payee, Lee, to the plaintiff, to whom the former was indebted in the sum of $5, plaintiff agreeing to return to him the balance. The check so altered and bearing the indorsements of both Lee and the plaintiff was, on June 15, 1897, together with $20 in bills, and aggregating $100.50, deposited by the latter with the defendant, for which amount he received credit in his pass book, and at which time he informed the bank's receiving teller that "he didn't want the check placed to his credit unless they were positive it was all right." The defendant then sent the check to its Philadelphia correspondent, the Philadelphia National Bank, for collection, and the latter, after collecting the amount of the check as raised, informed the defendant bank that it had been placed to its credit. On the 19th day of June, 1897, the plaintiff, having been informed by defendant's discount and collection clerk that the check was "all right," withdrew the sum of $75, and paid it over to the person claiming it. Defendant's correspondent on the 17th day of July, 1897, returned the check with notice that it had been raised, and that defendant's account had been charged with the amount thereof, the Philadelphia National Bank having on the day previous received notice from the drawee of the spurious character of the check. Thereupon the cashier of the defendant personally informed the plaintiff of the forgery, and three days later sent him a formal letter to the same effect. The defendant having refused to pay plaintiff the amount on deposit, viz. $46.15, the latter brought this action to recover it. The pleadings were oral. The answer, besides being a general denial, set up a counterclaim for $34.35, claiming that the plaintiff had overdrawn his account to that extent after charging it with the amount of the raised check. However, the defendant now concedes that this is incorrect, and that the counterclaim should be reduced to $25.85, after charging plaintiff's account with $72, being the difference between the original and the raised check. Judgment was given the plaintiff for the full amount claimed, from which the defendant has appealed.

The substantial question presented by this appeal is whether the defendant was entitled to charge the plaintiff's account with the amount of the raised check. This involves a consideration of certain general principles applicable to commercial paper, and regulating the rights and obligations of the respective parties, which, so far as they relate to the facts of this case, are as follows:

(1) The plaintiff, as an indorser and holder of the check, and claiming to be entitled to receive the amount thereof from the drawee, warranted the genuineness of the instrument and of every preceding indorsement. Canal Bank v. Bank of Albany, 1 Hill, 287; Bank of Commerce v. Union Bank, 3 N. Y. 230, 237; Turnbull v. Bowyer, 40 N. Y. 456; White v. Bank, 64 N. Y. 316, 320; Corn Exchange

Bank v. Nassau Bank, 91 N. Y. 74; Third Nat. Bank of City of New York v. Merchants' Nat. Bank, 76 Hun, 475, 27 N. Y. Supp. 1070.

(2) The Northwestern National Bank in Philadelphia, as drawee of the check, can only be held to a knowledge of the signature of R. M. Braithwait & Co., its depositors, who were the drawers. By accepting and paying the check, it only vouched for the genuineness of the signature, and cannot be held to a knowledge of the want of genuineness of any other part thereof, or of the bona fides of the holder. National Bank of Commerce in New York v. National Mechanics' Banking Ass'n of New York, 55 N. Y. 211; White v. Bank, supra.

(3) The forwarding of the check by the defendant to its correspondent in the usual course of business, in the absence of any express agreement in reference thereto, did not vest the title in the latter. Dickerson v. Wason, 47 N. Y. 439; National Park Bank v. Seaboard Bank, 114 N. Y. 28, 34, 20 N. E. 632.

(4) Money paid upon a raised check may be recovered, provided the one seeking to recover has not, by his careless or negligent act, injured or prejudiced the rights of the person from whom the recovery is sought. National Bank of Commerce in New York v. National Mechanics' Banking Ass'n, supra; Marine Nat. Bank v. National City Bank, 59 N. Y. 67, 77; Clews v. Bank of New York Nat. Banking Ass'n, 89 N. Y. 419; Third Nat. Bank of City of New York v. Merchants' Nat. Bank, supra; National Park Bank of New York v. Eldred Bank, 90 Hun, 285, 35 N. Y. Supp. 702.

The obligation of the defendant to return to the drawee the money received on the raised check, through its correspondent, is amply supported by the cases last cited. It was, therefore, entitled to charge the plaintiff with the amount so received, unless it had been guilty of negligence, and the burden of establishing that was, under the circumstances, upon the plaintiff. Mayer v. Mayor, etc., of New York, 63 N. Y. 455, 457; Inidig v. Bank, 80 N. Y. 100, 105. This he claims to have done, and he has called our attention to certain testimony which he regards as conclusive upon that point. It is insisted by the plaintiff that the statement of the teller of the defendant that the check was "all right," made in response to an inquiry by him of the latter, and the payment by plaintiff, in reliance thereon, of the sum of $75 balance due to the person from whom he received the check, constitute an estoppel in pais. The inquiry referred to was addressed to the discount and collection clerk of the defendant, "who looked at some book, and said it was all right," after plaintiff had informed him that the person present was "the man he had to give seventy-five dollars change to." As neither of the parties knew of the alteration when such conversation was held, and as the attention of the defendant's officers or employés was not called to the filling in of the check, or circumstances of suspicion disclosed to either of them if plaintiff had such, it seems to my mind a reasonable inference to draw from the evidence that inquiry regarding any change in the body of the check was not then within their contemplation. The duties of the teller in question related solely to the discount and collection of commercial paper, and his response that the check was "all right" must be limited to the

fact of its payment by the drawee, and not extended to the genuineness of the body of the check; and therefore the defendant is not, under the circumstances, estopped from alleging any alteration therein. These views find ample support, by analogy, at least, in numerous cases, among which are Espy v. Bank of Cincinnati, 18 Wall. 604; Marine Nat. Bank v. National City Bank, supra; Security Bank v. National Bank of the Republic, 67 N. Y. 458; Clews v. Bank of New York Nat. Banking Ass'n, supra. In Espy v. Bank of Cincinnati, above cited, a check had been raised from $26.50 to $3,920, and the name of the payee changed from Mrs. E. Hart to Espy, Heidelbach & Co., and it was then offered to the latter by a stranger in payment for bonds and gold purchased. The said firm sent to the bank for information regarding the check, and upon the teller's replying, "It is good," or "It is all right," they received the check, delivered the bonds and gold to the purchaser, and passed the check through the clearing house. The bank paid the check, but, on discovering the forgery, brought an action, in which it prevailed, to recover back the money from said Espy, Heidelbach & Co. The court held the following, among other, propositions:

"First. That when money is paid by mistake on a raised check, neither party being in fault, it may be recovered back as paid without consideration. Second. That when a party to whom such check is offered sends it to the bank on which it is drawn, for information, the law presumes that the bank has knowledge of the drawer's signature, and of the state of his account, and it is responsible for what may be replied on these points. Third. That, unless there is something in the terms in which the information is asked that points the attention of the bank officer beyond these two matters, his response that the check is good will be limited to them, and will not extend to the genuineness of the filling in of the check as to payee or amount."

The doctrine of this case is applied in the cases of Marine Nat. Bank v. National City Bank and Clews v. Bank of New York Nat. Banking Ass'n, supra. In the latter case a check, after certification, was raised, and the name of the payee changed, and was then offered to the plaintiff, who sent to the teller of the certifying bank, and asked if the certification was good. The teller, although the bank had previously been requested to stop payment of the check, answered "Yes," whereupon plaintiff accepted it in payment for certain bonds. In an action against the certifying bank to recover the amount of the raised check it was held that the plaintiff had no remedy against the defendant, and, regarding the inquiry made of the teller of the bank concerning the check, the court, speaking through Allen, J., said, in part:

"If the holder desires more accurate information, his inquiry should be more specific and far-reaching before he can transfer a loss, caused to him by the fraud of the person with whom he deals, to the innocent acceptor."

In Security Bank v. National Bank of the Republic, supra, the check was altered as to the amount and the name of the payee, and in that condition offered to Duff & Tienken, who were gold brokers, in payment for gold. One of the firm went with the check to plaintiff's bank, told the teller that he did not like the looks of the messenger who brought the check to his firm, and who was a total stranger, and that he "wanted the teller to be very particular before

certifying the check, as he had a doubt in his mind about it, and wanted to be assured that the check was genuine in every particular." The teller examined the check, certified it, and handed it back, saying: "You need not have the slightest doubt about that check. It is correct in every particular. The drawer is a director of the bank;" and the check was thereupon received by Duff & Tienken. The plaintiff, having paid to the defendant the amount of the raised check, brought an action to recover the amount thereof, and it was held that the plaintiff was not estopped by the statement made by the teller when the check was presented for certification. The court, through Andrews, J., said:

"It was no part of the teller's duty to give an assurance as to the genuineness of the check, except in respect to the signature of the drawers. If he went beyond this, his representation did not bind the bank. Moreover, if the reply made to the question put to him was intended as an affirmation of the genuineness of the body of the check, it was simply an expression of his opinion, and must have been so understood by the person who made the inquiry."

The case at bar is distinguishable from Continental Bank v. National Bank of the Commonwealth, 50 N. Y. 575, cited by the plaintiff, in that there the payee relied upon the pronouncement of the teller of the bank that a forged certification of a check was genuine, and the decision of the court that the circumstances created an equitable estoppel was based upon the admission of a fact peculiarly within the knowledge of, and which should have been known by, the bank upon which the check was drawn, as well as upon a positive assertion upon which the other party had a right to rely and did rely. In this case, however, it was no part of the clerk's duty to give an assurance as to the genuineness of the body of commercial paper presented for collection, he only being authorized to furnish information regarding its payment or nonpayment. The other cases cited by the plaintiff have no application to the question under consideration.

Plaintiff further contends that the defendant was guilty of negligence in the matter of giving him notice of the forgery. It is well settled that a person who has received the proceeds of raised commercial paper cannot avoid his liability to refund by showing that after the loss had occurred the person seeking to recover was negligent in discovering the forgery, or, after its discovery, in giving him timely notice, unless in the latter contingency it is coupled with proof that he was damaged by such failure to notify him within a reasonable time. National Bank of Commerce in New York v. National Mechanics' Banking Ass'n of New York, supra; Corn Exchange Bank v. Nassau Bank, 91 N. Y. 74; Third Nat. Bank of New York v. Merchants' Nat. Bank, supra. There was no proof whatever that the defendant was negligent in giving notice to the plaintiff of the forgery after its discovery; on the contrary, the undisputed evidence shows that the plaintiff was informed by the defendant of the forgery on the day that it first received notice. Moreover, the proofs fail to show that the plaintiff was damaged by delay, if there was any, in receiving notice of the forgery after its discovery. Ruggles, J., who wrote the opinion in Bank of Commerce v. Union Bank, supra,

says "the greater negligence in a case of this kind is chargeable on the party who receives the bill from the perpetrator of the forgery," and, continuing, the same learned judge says:

"The party who fraudulently passed the bill cannot avoid his liability to refund on the pretense of delay in detecting the forgery, or in giving notice of it; and, if reasonable diligence is exercised in giving notice after the forgery comes to light, it is all that any of the parties can require."

And in the case of Third Nat. Bank of New York v. Merchants' Nat. Bank, above referred to, O'Brien, J., lucidly expressing the reasoning of the court, says:

"But a claim of negligence, based upon a failure to discover, is very different from one based upon a failure, after discovery, to give notice. A failure to discover, though resulting in loss to another who might, if sooner apprised, have apprehended the forger, and recovered the money, gives no right of action; and for obvious reasons, one of which alone need be mentioned. There is no duty imposed on one who receives a forged check from another to unearth the crime. He receives it presuming, as he has a right to do, that all the signatures and indorsements are genuine, which is implicitly warranted by the person from whom it is received. This presumption, and the right to rely on this implied warranty, are only destroyed when, by inspection, the forgery could be detected because apparent on the face of the check or bill, or where, from the surrounding circumstances, the suspicions of the person receiving the note, check, or bill should be aroused, and his scrutiny challenged. Not so after discovery, for then the duty is incumbent on the one detecting the imposition to act promptly in giving notice, and, if he fails therein to the injury and damage of the one entitled to notice, he will be prevented from recovering the damage or injury shown to have been actually incurred."

There being no proof of the defendant's negligence or lack of reasonable diligence in giving notice of the forgery after its discovery, or, even if such were shown, that any damage was suffered thereby, the plaintiff cannot, in my opinion, avoid his liability to refund.

For these reasons the judgment should be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.