THE METROPOLITAN NATIONAL BANK

v.

THE MERCHANTS' NATIONAL BANK.

*Opinion filed October 25, 1899—Rehearing denied December 9, 1899.*

1. BANKS—*certification of raised draft does not preclude right of recovery.* Certification by a bank of a draft drawn upon it, but altered in amount, does not preclude it from showing the fact of such alteration, or prevent a recovery from the party who received the draft on the faith and credit of the certification alone.

2. SAME.—*legal construction of contract of certification cannot be altered by proof of local usage.* In assumpsit by a bank to recover money paid by it upon a draft which it certified without knowledge that it had been altered in amount, it cannot be shown that the contract of certification, by local usage or by the understanding of bankers and merchants, has a larger scope and meaning than it had by settled legal construction.*

3. SAME—*when bank receiving certified raised draft is liable to drawee for over-payment.* A bank to which a draft, altered in amount and thereafter certified by the drawee bank without knowledge of the fraud, is transferred by an endorsement not restrictive in its nature, and which receives payment of the amount from the drawee, which it credits to the indorser, without paying it over, is liable to the drawee upon discovery of the fraudulent alteration and after demand made for a return of the over-payment.

4. TENDER—*draft need not be tendered after refusal of formal demand for amount over-paid.* After formal demand for re-payment made by a drawee who paid the amount of a fraudulently altered draft, and the payee's refusal to do so, no tender of the draft is necessary before bringing suit to recover the amount over-paid.

5. ACTIONS AND DEFENSES—*what not a defense to suit by bank to recover over-payment of raised draft.* The right of a bank to recover the over-payment from one to whom it has paid a fraudulently raised draft is not affected by the fact as to whether it credited the drawer on its books with the over-payment before or after suit was begun.

6. APPEALS AND ERRORS—*assignment of error on instructions not considered unless alleged error is pointed out.* Error assigned upon instructions given or refused will not be considered on appeal, where the appellant fails to indicate or point out in his brief in what respect there was error.

*Metropolitan Bank v. Merchants' Bank*, 77 Ill. App. 316, affirmed.

*The authorities on banking customs are collected in a note to *Shaw & Schoonover v. Jacobs*, (Iowa,) 21 L. R. A. 440.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. ELBRIDGE HANECY, Judge, presiding.

We take the following statement of facts from the opinion of the Appellate Court:

"February 7, 1894, the Flour City National Bank of Minneapolis, by its cashier, A. A. Crane, for the sum of $35.10 to it then paid, drew and delivered its draft for $35 to Frank H. Harper, payable to his order and directed to appellee. The draft was also perforated '$35$.' February 13, 1894, this draft, changed in amount to $3500 and perforated '$3500$,' was presented to appellee for certification and accepted, and the change not being apparent to the paying teller of appellee, he accepted it, and the amount of $3500 was charged on the books of appellee to the Flour City National Bank. It does not appear by whom this change of the draft was made, but it was changed before its acceptance by appellee and without the knowledge or consent of the Flour City National Bank. February 13 or 14, 1894, the draft, as accepted and certified, was deposited by Harper with the American Trust and Savings Bank of Chicago and credited to his account. February 14, 1894, the draft was delivered by the American Trust and Savings Bank to appellant, and on that day appellee paid $3500 through the Chicago clearing house to appellant for the draft. This amount was subsequently credited by appellant to the American Trust and Savings Bank.

"February 17, 1894, a question having arisen as to the correct amount of the draft, appellee's officers telegraphed to the Flour City National Bank, and having received an answer went to appellant and made a demand that appellant redeem the draft, leaving the draft with appellant. On the same day appellant, by its second assistant cashier, returned the draft to appellee with

a letter stating that 'American Trust and Savings Bank declines to redeem the same. I will report the matter to Mr. Keith early Monday morning. Kindly return receipt given you.' February 19, 1894, which was the Monday referred to, a representative of appellee had an interview with Mr. Keith, appellant's president, who informed the representative that appellant could not redeem the draft because the American Trust and Savings Bank, under the advice of counsel, refused to redeem it. At the time of these interviews appellee's president knew that appellant cleared for the American Trust and Savings Bank, and testified that the endorsement on the draft so indicated. From February 14, 1894, to February 20, 1894, both days inclusive, it is uncontroverted that the American Trust and Savings Bank at no time had on deposit with appellant less than $198,000, and on February 19, 1894, when appellant finally refused to redeem the draft, it had to the credit of the American Trust and Savings Bank $288,018.77.

"At the time of the transactions in question appellee was the Chicago correspondent of the Flour City National Bank of Minneapolis, and the American Trust and Savings Bank not being a member of the Chicago clearing house, checks and drafts drawn upon or deposited with it were cleared through appellant, the same being received by appellant as deposits and credited to the American Trust and Savings Bank, against which account the latter drew. After this draft was received by the American Trust and Savings Bank, endorsed by Harper, it was stamped with the following endorsement, viz.: 'American Trust and Savings Bank.—Paid......February 14, 1894.—Paid through Chicago clearing house to Metropolitan National Bank.' There is evidence by way of opinions of banking experts tending to show that this endorsement has a significance peculiar to bankers of Chicago; that Chicago bankers generally understood it differently from the common and ordinary meaning of the

words, and to them it signified, in this case, that appellant was agent in the clearing house of the American Trust and Savings Bank to collect the draft. There is also evidence of the same character tending to show that the endorsement has no such peculiar significance to Chicago bankers, and that its significance to them is not different to what it is to laymen or others.

"When the draft was certified by appellee the amount of $3500 was charged to the Flour City Bank and was afterwards credited back, but whether before or after this suit does not appear. The Flour City Bank disputed the right of appellee to charge it over $35 because of the change in the draft. Appellee, on March 29, 1894, sued appellant in assumpsit to recover the difference between the draft as originally drawn and the amount of $3500 paid by it to appellant.

"It is claimed that the trial court erred in denying a motion of appellant, made some weeks prior to the trial, and renewed when the case was called for trial, to suppress the depositions of Harry W. White and A. A. Crane, for the reason that in the depositions both these witnesses testified concerning the original draft, which was then produced and offered in evidence, but, over the objection of appellant's attorneys, a copy instead of the original draft was attached to the depositions. The deposition of White was not offered or read in evidence on the trial. He was called as a witness for appellee, identified the original draft and testified that the body of the draft was in his handwriting,—that he signed it,—and as to the changes made in it after he signed it. After this testimony the draft was offered in evidence and thereafter the deposition of Crane was offered and read.

"It is also claimed that the court erred in refusing to allow appellant to show that in collecting the draft in question appellant acted as the agent of the American Trust and Savings Bank, and that this fact was known to appellee. The only evidence in this regard which it is

claimed the court excluded was an offer by appellant's attorney to show that appellee made a demand on the American Trust and Savings Bank February 17, 1894, for the payment of the draft in question. We think there was no reversible error in this ruling. The proffer was not to show that appellee had this knowledge prior to February 17. Whether appellant was agent or principal can make no difference, because, when demand was made on it by appellee for the payment of the draft, it had ample funds of the American Trust and Savings Bank with which to make the payment. The fact that appellant, when it collected the proceeds of the draft, at once credited the same to the American Trust and Savings Bank is not important. It did not pay merely by making entries on its books. The account was a running account, and the balance on the books of appellant to the credit of the American Trust and Savings Bank was $198,108.88 on February 17, when demand was first made, and on February 19, when appellant finally refused to redeem the draft, the balance was $288,018.77. There is no claim that there was any specific payment of this collection by appellant to the American Trust and Savings Bank.

"The further claim is made that the court erred in not directing a verdict for appellant. A motion to that effect was made at the close of all the evidence, and counsel for appellant stated that he had 'a written instruction here, the same as we presented to the court this morning.' The motion was overruled, but the instruction does not appear in the abstract or the record. An instruction in substance directing a verdict for defendant was asked, with other instructions for plaintiff and defendant, upon the merits of the question submitted to the jury."

It is assigned as error that the court gave improper instructions for appellee and refused to give proper instructions asked by appellant.

Appellee filed the common counts, with a special bill of particulars, and appellant pleaded the general issue.

On trial before the court and jury a verdict and judgment were entered for appellee for $4003.52, from which an appeal was prosecuted to the Appellate Court for the First District, where the judgment of the trial court was affirmed, and an appeal was prosecuted to this court.

MORAN, KRAUS & MAYER, for appellant.

OTIS & GRAVES, for appellee.

Mr. JUSTICE PHILLIPS delivered the opinion of the court:

Where a check or draft drawn upon a bank has been fraudulently raised or altered after it was drawn, the rule is well settled that money which has been paid by a bank upon such a fraudulently raised or altered check may be recovered back from the party to whom it was paid, in an action for money had and received, on the ground that the payment was without consideration and made by mistake. The fact that the bank on which it was drawn has certified the check after the change has been made is not conclusive against such bank, nor does it preclude it from showing the fact of such alteration, nor prevent a recovery from the party who received the check on the faith and credit of the certification alone. In 2 Daniel on Negotiable Instruments (sec. 1661) it is said: "Where money is paid by the bank upon a raised or altered check by mistake, the general rule is that it may be recovered back from the party to whom it was paid, as having been paid without consideration; but if either party has been guilty of negligence or carelessness by which the other has been injured, the negligent party must bear the loss. This doctrine is clear and is sustained by authority. The bank is not bound to know anything more than the drawer's signature, and in the absence of any circumstance which inflicts injury upon another party there is no reason why the bank should not be re-imbursed. Its certification of the check does not preclude it from show-

ing an alteration, nor does its teller's declaration, after he has examined it, that it is right in every particular."

In 2 Morse on Banking (3d ed. sec. 482,) it is said: "The better doctrine seems to be that certification of a check by a bank is a voucher on the part of the bank only for the facts that the signature is genuine and that there are funds enough to pay the amount for which the check purports to be drawn; that the bank does not warrant the genuineness of the body of the check or of any endorsement upon it; and that if there has been any fraudulent alteration or forged endorsement prior to such certification, the certification, like the payment, is made under a mistake of facts, and as the payment could be recovered back, so the certification is not binding." Many authorities are cited as sustaining this proposition.

In *Marine Nat. Bank* v. *National City Bank*, 59 N. Y. 67, it was held: "When a check is presented for certification to a bank on which it is drawn, the purpose is to ascertain with certainty what the bank alone can know, and that is, whether the drawers of the check have funds sufficient to meet it, and further, to obtain the engagement of the bank that those funds shall not be withdrawn from the bank by the drawers of the check. To this extent the knowledge of the bank enables it safely to go in the way of assertion, and its own power over its own funds will be sufficient to protect it as to its obligation."

In *Security Bank of New York* v. *National Bank of the Republic*, 67 N. Y. 458, where an action was brought by a bank to recover the amount paid upon a raised check which had been certified by it, evidence that by the common understanding of banks and merchants the word "certified," at the time of certification, when used in the certification of checks, is construed to import an obligation on the part of the certifying bank to pay the amount stated in the check notwithstanding the body of it was forged, was held to be inadmissible. In such an action the plaintiff was not estopped from alleging the forgery

by the fact that its teller, at the time that the check was presented for certification, upon doubts being expressed in regard to it by the person presenting it, stated that it was right in every particular; that it was no part of the teller's duty to give assurance as to the genuineness of the check except in respect to the signature of the drawer, beyond which the bank was not responsible for his representations.

In *First Nat. Bank* v. *Northwestern Nat. Bank,* 152 Ill. 296, it was held (p. 311): "The evidence shows that appellee accepted two of the checks, 'payable through Chicago clearing house,' prior to the time that they were transferred to Chapin & Gore. This makes no difference. An acceptor is bound to look only at the face of the bill or check, and an acceptance never proves an endorsement; and even if the supposed endorsements of the payees of said two checks were on them at the times when they were respectively accepted, yet such acceptances did not admit the handwriting of the endorsers. (*Smith* v. *Chester,* 1 Term Rep. 654; *Robinson* v. *Yarrow,* 7 Taunt. 455; 2 Eng. Com. Law, 445.) In this case the acceptance or certification of the two checks simply warranted the genuineness of the signatures of the drawer, and that it had funds sufficient to meet them, and engaged that those funds should not be withdrawn from the bank by the drawer, and that the bank would pay, through the agency of the Chicago clearing house, the amount, if any, actually due on the check to the person legally entitled to receive it. The acceptance or certification did not warrant the genuineness of the bodies of the checks, either as to the payees or the amounts, or warrant the genuineness of the endorsements on the checks."

At the time the draft in question was presented to the Merchants' National Bank through the Chicago clearing house it had not only the endorsements of the drawer, but also stamped thereon, "American Trust and Savings Bank.—Paid Feb. 14, 1894.—Paid through Chicago clear-

ing house to Metropolitan National Bank." With these endorsements thereon the draft in question was brought to the Metropolitan National Bank, and the legal effect of the endorsements was that the draft became the property of the latter bank and it owed the amount to the American Trust and Savings Bank. The endorsements were in no way restrictive, and contained no notice that appellant was acting as agent. As held in the case of *Security Bank of New York* v. *National Bank of the Republic, supra:* "The offer to prove that the contract of certification, by local usage or by the understanding of bankers and merchants, had a larger scope and meaning than it had by settled legal construction, was inadmissible.— *Burgett* v. *Oriental Mutual Ins. Co.* 3 Bos. 385; *Higgins* v. *Moore,* 34 N. Y. 417; *Lawrence* v. *Maxwell,* 53 id. 19; *Wheeler* v. *Newbould,* 16 id. 392."

Whilst a restricted character of endorsement cannot be shown to be different from that under which the endorsement would be held to be by its legal construction, the language of the stamped endorsement indicates that the draft was not deposited for collection, merely, but for the purpose of being deposited to the credit of the American Trust and Savings Bank. The manner of doing business and the large sums kept on deposit with the Metropolitan National Bank by the American Trust and Savings Bank are indicative of such being the purpose and intention,—that it was endorsed for the purpose of collection and deposit, and not for the purpose of collection merely. It was held in the case of *National Commercial Bank* v. *Miller,* 77 Ala. 168: "When a bank receives from a customer a check on another bank for the special purpose of collection, the title does not pass by the special endorsement for that purpose, nor does the receiving bank hold the amount until the check is collected. But where the customer has a deposit account with the bankers on which he is accustomed to deposit checks payable to himself, which are entered on his pass-book, and to

draw against such deposits, an endorsement of the words 'for deposit' on a check so deposited is, in the absence of a different understanding, presumptive of more than mere agency or authority to collect. It is a request and direction to deposit the sum to the credit of the customer, and gives to the bankers authority not only to collect but to use the check in such manner as, in their judgment and discretion, having reference to the conditions and necessities of their business, may make it most available to their protection, and they may have it certified by the bank on which it is drawn." The endorsement in that case was as follows: "For deposit.—A. Proskauer & Co., Agents." The court, in defining the legal meaning of the endorsement, say: "The special purpose for which an endorsement for deposit is made, under such circumstances, may be readily inferred. It was a request and direction to the garnishees to deposit the same to the credit of the defendants, and conferred on them not only authority to collect, but also authority to put the check in such form and use it in such manner as in their judgment and discretion, having reference to the conditions and necessities of their business, would make it most available to their protection. The effect of the endorsement for the consummation of this purpose is to vest the garnishees with the title and control of the check. If, in such case, the check is not paid, a banker depends for safety and indemnity on the drawer and the security of the endorsement."

In *Brahm* v. *Adkins*, 77 Ill. 263, it was held: "The paper introduced in evidence showed merely the fact that defendants were bankers, a deposit with them by plaintiff, and the amount thereof. It was *prima facie* a general deposit. A deposit is general unless the depositor makes it special or deposits it expressly in some particular capacity. (*Keene* v. *Collier*, 1 Metc. (Ky.) 415; *In the matter of Franklin Bank*, 1 Paige, 249.) This, then, upon plaintiff's own showing, was the ordinary case of a deposit of money

with bankers, and there was an implied undertaking on their part to restore, not the same funds, but an equivalent sum, whenever it should be demanded.—Story on Bailments, sec. 88; *Marine Bank* v. *Rushmore*, 28 Ill. 463; *Boyden* v. *Bank of Cape Fear*, 65 N. C. 13."

The evidence in this case showed that the American Trust and Savings Bank had a deposit account with the Metropolitan National Bank that was a running account, and the amount of deposits between the 14th and 20th days of February is given. The evidence shows that there was deposited in the Metropolitan National Bank to the credit of the American Trust and Savings Bank the following: On the night of the 14th of February, $338,831.43; on the night of the 15th of February, $333,-668.76; on the night of the 16th of February, $245,440.25; on the night of the 17th of February, $198,108.88; on the night of the 19th of February, $288,018.77; on the night of the 20th of February, $389,484.18; and there is no evidence to show that the money collected on this draft was paid over to the American Trust and Savings Bank, further than that it was carried into the account between the two banks.

The principle with reference to an agent is, so long as he stands in his original situation, where he has received money by mistake and has done no act on the assumption that the payment was good, and there has been no change of circumstances by reason of his having paid over the money to his principal or nothing done equivalent to it, he remains liable individually. The mere forwarding of the account to his principal and placing the money to his credit are not such circumstances as will relieve him. (Mechem on Agency, sec. 562.) It was held in *Smith* v. *Binder*, 75 Ill. 492: "When a contract has been rescinded, or a person has received money as agent of another who had no right thereto and has not paid it over, an action may be sustained against the agent to recover the money; and the mere passing of such money

in account with his principal, or making a rest without any new credit given to him, fresh bills accepted or further sums advanced to the principal in consequence of it, is not equivalent to a payment of the money to the principal."

The endorsement by Harper, with the American Trust and Savings Bank, was expressly an endorsement for a deposit to the credit of the endorser when the same should be collected. It reads: "For deposit in the American Trust and Savings Bank.—Credit of Frank H. Harper." Neither that endorsement nor the stencil stamp of the American Trust and Savings Bank can be construed to be other than an unconditional deposit. Whatever the relation was between the Metropolitan National Bank and the American Trust and Savings Bank, there is no evidence that the relations between the two banks were disclosed to the Merchants' National Bank or that it had knowledge of any fact of the agency. It is said in 2 Morse on Banking (sec. 577): "But where the customer has a deposit account with the bankers, on which he is accustomed to deposit checks payable to himself, which are entered on his pass-book, and to draw against such deposit, an endorsement of the words 'for deposit' on the checks so deposited is, in the absence of a different understanding, presumption of more than mere agency or authority to collect. It is a request and direction to deposit the sum to the credit of the customer, and gives to the bankers authority not only to collect but to use the check in such manner as in their judgment and discretion, having reference to the condition and necessities of their business, may make it more available in their possession, and they may have it certified by the bank on which it is drawn." Neither the endorsement and transfer of the draft by Harper to the American Trust and Savings Bank nor by that bank to the appellant constituted a restricted endorsement, disclosing the relation of agency on the part of the appellant, and for collection only.

As to the question with reference to the giving and refusing of instructions, we adopt the reasoning and concur in the conclusions reached by the Appellate Court, as follows:

"The first instruction given for appellee is claimed to be erroneous in that it fails to contain two facts essential to recovery by appellee, namely: First, the necessity of offering to return the draft and of proving that appellee had a claim at the time of the commencement of this suit; and second, that in the collection of the draft appellant acted as agent of the American Trust and Savings Bank, and paid over the money before receiving any notice that the draft had been altered or any demand for the re-payment of the money. The instruction is, namely:

" '1. The jury are instructed that if they find, from the evidence, that the Flour City National Bank of Minneapolis, on or about the seventh day of February, 1894, issued its draft upon the plaintiff for the sum of $35, payable to the order of Frank H. Harper, and delivered it to him for that sum, but afterwards the said draft was fraudulently altered and raised by said Frank H. Harper, or some person unknown, so that it purported to be drawn for the sum of $3500 instead of for the sum of $35 only, without the knowledge or consent of the said Flour City National Bank, the drawer thereof, and that afterwards the said draft so fraudulently raised and altered, as aforesaid, was presented to the plaintiff for certification and acceptance, and that thereupon the said plaintiff, by its duly authorized agent in that behalf, without knowledge that said draft had been changed or altered, endorsed upon said draft the following words: 'Accepted, payable through Chicago clearing house, February 13, 1894, when properly endorsed.—Merchants' National Bank, by Philip P. Lee, teller,' and that the said draft was by the said Frank H. Harper deposited for credit in the American Trust and Savings Bank of Chicago, and that the same was by said American Trust and Savings Bank endorsed

and delivered to the defendant, and that afterwards said plaintiff paid to the defendant, in the usual course of business, the full sum of said $3500, being the amount of said draft after the same had been so fraudulently changed and raised as aforesaid, instead of the sum of $35, being the sum for which said draft was actually drawn, without knowledge of the fact that it had been so raised and changed, and that subsequently, and within a reasonable time after the discovery of the fact by the plaintiff that said draft had been fraudulently changed and altered, as aforesaid, from $35 to $3500, (if the jury find, from the evidence, that it had been so fraudulently changed and altered,) demand was made by the plaintiff on said defendant for re-payment of said amount so received and collected on said draft in excess of $35, the sum for which it was originally drawn, and that payment thereof by said defendant was refused, then the jury are instructed that the plaintiff had a right to recover of the defendant in this action the sum of $3465. The jury are further instructed that in case they find, from the evidence, the plaintiff is so entitled to recover from said defendant the sum of $3465, and if they further find, from the evidence, that there has been unreasonable and vexatious delay in the payment of the same by the said defendant to the said plaintiff, they may allow interest thereon at the rate of five per cent per annum.'

"When appellant was requested to redeem the draft by appellee the draft was turned over to appellant and by it retained until it had made investigation, whereupon, having refused to redeem the draft, appellant returned it to appellee, and cannot be heard now, in the face of these facts, to claim that appellee should again offer to return the draft; and, moreover, no tender of the draft was necessary after a formal demand was made for its payment and a refusal to pay by appellant. *Brewster* v. *Burnett,* 125 Mass. 68.

"Whether appellee charged or credited the Flour City National Bank with the amount of the draft was immaterial. The facts, as shown by the record outside the book-keeping of appellee, fix the rights of appellee and the Flour City Bank. When appellee accepted the draft under the circumstances shown, it became liable to pay it, and when the draft was paid and the forgery afterwards discovered, appellee could rightfully charge the Flour City Bank only the amount for which the draft was originally drawn, and it could make no difference, as between the Flour City National Bank and appellee, whether appellee credited on its books the proper amount before or after this suit was commenced. *Brewster case, supra.*

"What has been said in regard to the agency of the appellant, and notice to appellee of such agency, disposes of the remaining contention as to this instruction. Under the evidence, so far as concerns the alleged agency, the court might well have instructed a verdict for appellee instead of submitting the matter to the jury. We see no error in the instruction. The same contention is made by appellant as to instructions 2 and 3 given for appellee. It is unnecessary to set them out. We think there was no error in giving them.

"The court also refused twenty-four other instructions asked by appellant, and gave for appellee instructions Nos. 4, 6 and 7, of which complaint is made, but in what respect there was error in refusing or giving any of these numerous instructions counsel have not attempted, by their brief, to point out, and we do not feel called upon to consider them further than to say we have examined the instructions given for appellee and appellant, and being of the opinion that the jury was fully instructed on the questions at issue and that the record presents no reversible error, the judgment will be affirmed."

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*