## National City Bank of Chicago, Appellee, v. National Bank of the Republic of Chicago, Appellant.

### Gen. No. 25,372.

1. BILLS AND NOTES, § 219*—*what is effect of forged indorsement.* Nothing is better settled than that a forged instrument does not pass title to commercial paper negotiable only by indorsement and does not justify the payment of such paper.

2. BILLS AND NOTES, § 219*—*when alteration constitutes forgery.* The eradication of the name of the payee in a draft which had been stolen and the insertion of the name of the thief in such draft, and the indorsement of such person's name on the back and his obtaining jewelry and money on the draft, constituted a forgery which in practical effect amounted to a forged indorsement of the name of the real payee.

3. BILLS AND NOTES, § 306*—*when drawee may recover money paid on forged draft.* A bank which was the drawee in a draft which was stolen and the name of the payee erased and a new name inserted, was entitled to recover the amount paid by it to another bank which had received the draft from one of its customers.

4. BILLS AND NOTES, § 306*—*what is effect of statute as to right of drawee to recover money paid on forged draft.* Section 61 of the Negotiable Instruments Act (Hurd's Rev. St. ch. 98, J. & A. ¶ 7700), providing that the drawer admits the existence of the payee and his then capacity to indorse, etc., and section 62 (J. & A. ¶ 7701), providing that the acceptor admits the existence of the drawer, the genuineness of his signature, his capacity and authority to draw the instrument and the existence of the payee and his then capacity to indorse, considered in an action by the drawee bank to recover the amount of a stolen draft which it paid to another bank which had received it from a customer, and held that under said section 61 the drawer could be held to admit the existence and such capacity of the original payee whose name had been written by the drawer, and not the existence and such capacity of another person whose name had been fraudulently substituted as payee by some one after the instrument left the hands of the drawer; and that under section 62 the acceptor likewise should be held only to admit the existence and capacity of the original and true payee.

Appeal from the Circuit Court of Cook county; the Hon. A. D. MORGAN, Judge, presiding.    Heard in the Branch Appellate Court

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

at the October term, 1919.    Affirmed.    Opinion filed October 13, 1920.

MOSES, ROSENTHAL & KENNEDY, for appellant; HAMILTON MOSES and HENRY JACKSON DARBY, of counsel.

NELSON, LITTLE, GORDON & WIRE, for appellee.

MR. JUSTICE GRIDLEY delivered the opinion of the court.

This is an appeal from a judgment for $768.26, entered June 5, 1919, by the circuit court of Cook county against the National Bank of the Republic of Chicago, defendant, in favor of the National City Bank of Chicago. Plaintiff's declaration consists of the common counts. In its affidavit of claim it is stated that "the nature of plaintiff's demand is for money had and received by the defendant on or about January 12, 1915, when plaintiff paid defendant $629.80, upon    *    *    * a check or draft, which before said date had been altered by erasing the name of the payee and inserting therein the name of Andrew H. Manning; and that there is due to plaintiff from defendant    *    *    *    the sum of $629.80 with interest thereon from January 12, 1915, at 5 per cent per annum." The defendant filed a plea of the general issue, supported by an affidavit of merits. The case was tried before the court without a jury upon a stipulation of facts, supplemented by the introduction in evidence by defendant of a certain memorandum in writing, made by plaintiff on January 9, 1915, and called a "certification debit." The court found the issues in favor of plaintiff and assessed plaintiff's damages, including interest, at the sum of $768.26.

It appears from the stipulated facts, in substance, that in January, 1915, plaintiff and defendant were corporations, then and since engaged in the banking business at Chicago, Illinois; that the Broadway Sav-

Nat. City Bk. v. Nat. Bk. of the Republic, 219 Ill. App. 343.

ings Trust Company (hereinafter referred to as the St. Louis bank) was engaged in the banking business at St. Louis, Missouri; that the Jackes-Evans Manufacturing Company (hereinafter referred to as the Jackes Co.) was engaged in the manufacturing business at St. Louis; that the American Sheet & Tin Plate Company (hereinafter referred to as the Tin Plate Co.) was engaged in the manufacturing business at Pittsburgh, Pennsylvania; that Philip Barnett, doing business as Barnett Bros., was engaged in the jewelry business at Chicago; that on January 4, 1915, the Jackes Co., being indebted to the Tin Plate Co. for merchandise in the sum of $629.80, purchased a draft for said amount of the St. Louis bank for the purpose of paying said indebtedness; that said draft, No. 5584, was on that day drawn by said St. Louis bank on the plaintiff bank, as drawee, in the sum of $629.80 and was payable to the order of ''The American Sheet & Tin Plate Company''; that later on the same day the Jackes Co. inclosed said draft, together with a letter, in an envelope addressed to the Tin Plate Co. at Pittsburgh and mailed the same; that said draft and letter ''were stolen from the mails in St. Louis by a person who has since been identified as Andrew H. Manning''; that at some time between January 4 and January 9, Manning, by use of chemicals, eradicated the name of the Tin Plate Co., as payee of said draft, and fraudulently substituted therefor the name of ''Andrew H. Manning''; that on January 9, 1915, Manning, theretofore unknown to Barnett, appeared at the latter's jewelry store in Chicago, introduced himself as Andrew H. Manning, and selected and agreed to purchase certain jewelry for the agreed price of $600; that in payment therefor he tendered to Barnett said draft, altered as aforesaid; that Barnett inquired if he might take said draft to the plaintiff bank for the purpose of having the same certified by it, as drawee, and Manning assented; that thereupon Manning, in Barnett's

presence, indorsed the draft in blank by writing at the top on the reverse side the name "Andrew H. Manning," and Barnett took the draft and personally presented it for certification to the plaintiff bank; that thereupon said bank, by its paying teller, certified the draft by writing across its face the words "Accepted, payable through Chicago Clearing House, 55055, Jan. 9, '15," and the draft so certified was returned to Barnett; that at the time of said certification the plaintiff bank made certain memoranda in writing, on a so-called "certification debit," to the effect that said draft No. 5584, of the St. Louis bank on it, to the order of Manning, had been certified and the amount thereof charged to the account of the St. Louis bank; that at this time Manning's said alteration of the draft was unknown to and was not in the exercise of ordinary care by inspection discoverable by either Barnett or the plaintiff bank; that Barnett returned to his place of business and delivered the jewelry and $29.80 in currency to Manning and retained said draft, so indorsed and certified; that thereafter Barnett, below Manning's indorsement, indorsed the draft "Barnett Bros., Pay to the order of National Bank of the Republic, P. Barnett," and deposited it on Monday, January 11, in the defendant bank, of which he was a customer, to the credit of his account; that the defendant bank indorsed the draft and presented it for payment to the plaintiff bank on January 12, through the medium of the Chicago Clearing House, and the plaintiff bank on that day paid to the defendant bank the amount of the draft; that up to this time Manning's said alteration of the draft was unknown to plaintiff bank, defendant bank or Barnett, and none of them was negligent in failing to know that fact; that thereafter on February 4, 1915, according to usual practice, the plaintiff bank returned the draft as a canceled voucher, together with other canceled vouchers, to the St. Louis

bank; that on February 5 the St. Louis bank wrote the plaintiff bank, returning said draft, saying that it originally had been made payable to the Tin Plate Co. and that the name of the payee had been altered, and asking that its account with the plaintiff bank be credited to the amount of the draft; that on February 6, the plaintiff bank, by letter, notified the defendant bank of said alteration and asked to be reimbursed; that on February 8 the defendant bank by letter notified Barnett that the plaintiff bank had requested reimbursement and that defendant bank looked to Barnett for protection; that on February 11 the defendant bank wrote the plaintiff bank to the effect that its indorser, Barnett, upon advice of counsel, had refused to pay back the amount received on the draft, and that defendant bank also refused; and that on February 27 the plaintiff bank paid to the St. Louis bank the sum of $629.80, in satisfaction of the latter's claim that the plaintiff bank "had not paid draft, No. 5584, to the order of the American Sheet & Tin Plate Company, the payee originally designated in said draft," and subsequently the present action was commenced.

In *First Nat. Bank v. Northwestern Nat. Bank,* 152 Ill. 296, 311, it is said:

"When appellant indorsed the nine checks, and collected from appellee the sums of money called for by them, it warranted the genuineness of all the preceding signatures indorsed on the respective checks, including the indorsements on the checks of the names of the respective payees named in such checks.  (2 Parsons on Notes and Bills 588; *Williams v. Tishomingo Sav. Inst.,* 57 Miss. 633; Story on Bills of Exchange, sec. 225.)  And where a drawee on a bank pays a bill of exchange or a bank check to an indorser who derives title through a prior forged indorsement, he may recover back the money so paid, on discovery of the forgery, provided he makes demand for repayment within a reasonable time after the discovery of such forgery. (2 Daniel on Neg. Inst. secs. 1364, 1372; *Canal Bank*

*v. Bank of Albany*, 1 Hill [N. Y.] 287; *Williams v. Tishomingo Sav. Inst., supra.*) The evidence shows that appellee accepted two of the checks, 'payable through Chicago Clearing House,' prior to the time that they were transferred to Chapin & Gore. This makes no difference. An acceptor is bound to look only at the face of the bill or check, and an acceptance never proves an indorsement; and even if the supposed indorsements of the payees of said two checks were on them at the times when they were respectively accepted, yet such acceptances did not admit the handwriting of the indorsers. (*Smith v. Chester*, 1 Term Rep. 654; *Robinson v. Yarrow*, 7 Taunton 455; 2 Eng. Com. Law 445.) In this case, the acceptance or certification of the two checks simply warranted the genuineness of the signatures of the drawer, and that it had funds sufficient to meet them, and engaged that those funds should not be withdrawn from the bank by the drawer, and that the bank would pay through the agency of the Chicago Clearing House the amount, if any, actually due on the check, to the person legally entitled to receive it. The acceptance or certification did not warrant the genuineness of the bodies of the checks, either as to the payees or the amounts, or warrant the genuineness of the indorsements on the checks. (*Marine Nat. Bank v. National City Bank*, 59 N. Y. 67; *Security Bank v. National Bank of Republic*, 67 N. Y. 458.)''

In *Metropolitan Nat. Bank v. Merchants' Nat. Bank*, 182 Ill. 367, 372, it is said:

''Where a check or draft drawn upon a bank has been fraudulently raised or altered after it was drawn, the rule is well settled that money which has been paid by a bank upon such a fraudulently raised or altered check may be recovered back from the party to whom it was paid, in an action for money had and received, on the ground that the payment was without consideration and made by mistake. The fact that the bank on which it was drawn has certified the check after the change has been made is not conclusive against such bank, nor does it preclude it from showing the

fact of such alteration, nor prevent a recovery from the party who received the check on the faith and credit of the certification alone.''

In *Beattie v. National Bank of Illinois*, 174 Ill. 571, 575, it is said:

''Nothing is better settled than that a forged indorsement does not pass title to commercial paper negotiable only by indorsement, and does not justify the payment of such paper.''

In the present case, when Manning, after obtaining possession of the instrument by theft, eradicated the name of the Tin Plate Co., the original payee thereon, and fraudulently substituted his own name as payee, and, before the certification of the draft by the plaintiff bank, indorsed his own name on the back of the draft and subsequently obtained jewelry and money on it as aforesaid, he committed a forgery, and which, we think, amounted in practical effect to a forged indorsement of the name of the Tin Plate Co., the real payee.

Some of the provisions of the present Negotiable Instruments Law of this State in force July 1, 1907 (Hurd's Rev. St. ch. 98, J. & A. ¶¶ 7700, 7701, 7771), are as follows:

Engagements of Drawer.] Sec. 61. ''The drawer by drawing the instrument admits the existence of the payee and his then capacity to indorse, and engages that on due presentment the instrument will be accepted or paid, or both, according to its tenor; * * *.''

Engagements of Acceptor.] Sec. 62. ''The acceptor by accepting the instrument engages that he will pay it according to the tenor of his acceptance, and admits:

''1. The existence of the drawer, the genuineness of his signature, and his capacity and authority to draw the instrument; and

''2. The existence of the payee and his then capacity to indorse.''

Acceptance—Must be in Writing and Unconditional.] Sec. 131. ''The acceptance of a bill is the sig-

nification by the drawee of his assent to the order of
the drawer.   The acceptance must be in writing and
signed by the drawee.   It must not express that the
drawee will perform his promise by any other means
than the payment of money.''

The decisions of our Supreme Court above men-
tioned were all made prior to the passage of said law.
Counsel for defendant bank admit that said decisions
support the conclusion reached by the trial court in
the present case, but counsel contend that, because of
the provisions of section 62 of said law, these decisions
are no longer controlling, and that because of said pro-
visions the judgment should be reversed.

Counsel's argument, as we understand it, is in sub-
stance as follows:   That when Barnett presented the
draft to the plaintiff bank for certification on January
9, 1915, the name of the payee thereon was ''Andrew
H. Manning'' and said Manning's name was on the
back of the draft as an indorser; that the plaintiff bank
certified the draft by writing across its face the words,
''Accepted, payable through Chicago Clearing House'';
that the plaintiff bank by said act engaged that it
would pay the draft ''according to the tenor of its
acceptance'' (viz., unconditionally, through the Chi-
cago Clearing House), and *admitted*, according to the
provisions of said section 62, the existence of *Manning*,
the payee, and *his* then capacity to indorse; that sub-
sequently the plaintiff bank paid the draft upon pres-
entation through said clearing house; and that, there-
fore, the plaintiff bank, because of said provisions
contained in said section 62, should stand the loss
rather than Barnett or the defendant bank, notwith-
standing the fact that when the plaintiff bank accepted
the draft, and when it paid it, it did not know, and in
the exercise of ordinary care by inspection could not
know, that the draft had been altered by forgery and
that Manning was not the payee thereof as originally
drawn.

Nat. City Bk. v. Nat. Bk. of the Republic, 219 Ill. App. 343.

We do not think that the provisions of said section 62, when read in connection with other sections of the same act, have changed the law of this State as enunciated by the decisions of our Supreme Court above mentioned. By section 61 it is provided that the drawer "admits the existence of the payee and his then capacity to indorse." It seems clear to us that, under this provision, the drawer can only be held to admit the existence and such capacity of the original payee, whose name has been written on the instrument by the drawer, and not the existence and such capacity of another person whose name has been fraudulently substituted as payee by some one after the instrument has left the hands of the drawer. And we think that under the similar provision of section 62 the acceptor likewise should only be held to admit the existence and such capacity of the original and true payee. By the provisions of section 131 the drawee's acceptance of the bill is the signification of his assent "to the order of the drawer." In the present case the order of the drawer was that the plaintiff bank should pay the amount of the draft "to the order of the American Sheet & Tin Plate Company," and not to the order of "Andrew H. Manning."

For the reasons indicated the judgment of the circuit court is affirmed.

*Affirmed.*

BARNES, P. J. and MATCHETT, J., concur.